# THE NICOLSON PAVEMENT COMPANY *v.* J. B. PAINTER.

STREET IMPROVEMENTS IN SAN FRANCISCO—POWER OF BOARD OF SUPERVISORS.— The Board of Supervisors of the City and County of San Francisco, in respect to street improvements, have whatever power is conferred by the statutes on that subject, and no other. The power which they possess must be exercised in the mode prescribed by said statutes, and in no other. "The *mode* in such cases constitutes the *measure* of the power."

IDEM—POLICY OF THE STATUTES ON THE SUBJECT.—The evident policy of the general law upon the subject of street improvements in San Francisco, as passed in 1862 and amended in 1863, (Stats. 1862, p. 391; 1863, p. 525,) is to secure and protect the persons who are made to pay the cost of the improvement from official

mismanagement and wanton or reckless exercise of power, by advising them of what is proposed to be done, by enabling them to do the work themselves, if they so elect, and especially by securing the performance of the work by responsible persons and upon the lowest terms. This policy cannot be defeated by the Board of Supervisors, by setting aside the measures which have been provided for its enforcement.

Idem.—The Board of Supervisors has no power, in making street improvements, so far as conferred by said statutes of 1862 and 1863, to do any kind of work which, for any cause, cannot be let or contracted for in the mode prescribed in said statutes, or which the owners of the frontage are legally prohibited from performing.

Idem—Nicolson Pavement.—Where said Board, while assuming to act under said statutes of 1862 and 1863, advertised for proposals to put down on a street in said city the Nicolson pavement, which had been patented under the laws of the United States, and awarded a contract therefor to R., who owned the exclusive right to put down said pavement in said city, and who alone put in a bid for said contract : *Held*, that the Board exceeded its authority, and the contract was void.

Idem—Power of the Board of Supervisors to Contract for Nicolson Pavement.—Whatever power said Board of Supervisors has in relation to the Nicolson pavement is derived from the statute relating thereto, (Stats. 1865-6, p. 720,) under which the power can be exercised only upon the petition therefor of a majority of the owners, or their agents, in frontage, and upon the condition that the pavement shall not cost to exceed twenty-eight cents in coin per square foot. Where the Board advertised for proposals and awarded a contract for the construction of said pavement in said city, without having received said petition : *Held*, that the contract was void.

Appeal from the District Court, Fourth Judicial District, City and County of San Francisco.

This was an action to recover a street assessment for laying down the Nicolson pavement in Powell street, in the City and County of San Francisco.

It appeared from the record on appeal that the proceedings taken by the Board of Supervisors, preliminary and subsequent to advertising for proposals for bids, which proposals were to put down said Nicolson pavement, were in general pursuance of the provisions of the legislative Acts of 1862 and 1863, (Stats. 1862, p. 391, and 1863, p. 525,) and were not predicated on any petition by the owners (or their agents) of a majority of the frontage on said street, for the paving of the same with the Nicolson pavement.

The contract for making said improvement was awarded to James J. Robbins, who alone put in a bid therefor, at the

rate of thirty-eight cents per square foot.   The plaintiff received an assignment of said contract from said Robbins, and made said street improvement.   At the time said proceedings of the Board of Supervisors were instituted, and thereafter until this action was brought, the right to lay said Nicolson pavement was secured by letters patent of the United States, and the plaintiff, as the assignee of the patentee, had the sole and exclusive right to lay the same in the City and County of San Francisco.

The trial was by the Court, without a jury, and upon findings of fact filed by the Court, judgment passed for the plaintiff.   The defendant moved for a new trial, on the grounds, first, that the evidence was insufficient to justify the findings and decision of the Court, and second, that the decision is against law.   The motion for a new trial was denied, and the defendant appealed from the judgment and from the order denying a new trial.

*Elliott J. & Joseph H. Moore*, for Appellant.

The evidence is insufficient to justify the findings and decision of the Court in this:  The work awarded, assessed, and sued on for laying Nicolson pavement.   The resolution of intention, and that ordering the work done, express "paving" simply, and Nicolson is mentioned for the first time in the notice for sealed proposals.   It is after notice of intention, "in the form of a resolution describing the work," that the Board acquires jurisdiction, (Consol. Act, Art. IV, Sec. 4,) and its jurisdiction is restricted to the work of which notice is so given.   The Board, not having "described the work," did not acquire jurisdiction by its resolution to order Nicolson pavement laid, and the award of the Board and the contract of the Superintendent were unlawful; and from this it follows that the warrant, assessment, etc., did not tend to show a cause of action against defendant.

The decision was against law.   It was admitted by plaintiff that no petition was made at any time to the Board to

have Nicolson pavement laid, as respects the subject of this action. The legal conclusion would be that the Board acquired no jurisdiction to order it laid. (Stats. 1865–6, p. 720.) If an application of a majority of owners is necessary, the proceedings are to be deemed void unless the application is shown to have been made, (*Sharp* v. *Johnson*, 4 Hill, 92; *Atkins* v. *Kinnan*, 20 Wend. 249,) and a void ordinance is not aided by being carried into effect. (16 How. Pr. 432; 2 Den. 113.) A petition, signed by the majority in interest, waives or takes away the right otherwise secured to owners by Article IV, section six, of the Consolidation Act, to have the work put up to competition, and to take the work themselves at the price of the award. Under the Consolidation Act, the Nicolson pavement, as a tax, is impossible, except with the consent of each owner; because the right of the owners to take the work, if they so elect, is unqualified and inviolable by its provisions. The Board can only, therefore, order and award such work as owners can lawfully do, and to order and invite proposals for patented work is to cut off their right to perform it. To say that, under the Act last referred to, the Nicolson pavement may be ordered and awarded, save by common consent first had, is not only to ignore the cardinal principle of that Act, namely, to lighten the burden incident to street improvements, by the effect of competition, but also to lead to the strange confusion of affirming that the same Act which gives an unconditional right, (*i. e.* to have the work bid for, and to do the work, if owners so elect,) may also provide to take that right utterly away, (*i. e.* by ordering patented work.) That right, as we have shown, may be waived by petition of the owners, but it cannot be violently wrested from them.

*Wilson & Crittenden*, for Respondent.

Prior to the passage of the Act of 1866, the Board had the same power to cause the streets of San Francisco to be paved with the Nicolson pavement as with any other; leaving

out of the question now all consideration of the right to lay it being patented.   More full and complete power and authority could hardly be expressed in words than is granted by section third of Article IV of the Consolidation Act, as amended at page three hundred and ninety-one of the Statutes of 1862.  By its terms the Board were "authorized and empowered to order the whole or any portion of the said streets, lanes, alleys," etc., "paved or repaved," etc.  *Prima facie*, then, the Board had full power to cause any street in the city to be paved with Nicolson pavement, under this law of 1862.   No additional law was needed to enable them to do this.   In doing this, they must proceed by resolution of intention, publication thereof, and by taking the other steps provided by this same statute.   The law of 1866 was not needed to give the Board this power.   Unless this power, so granted by the Act of 1862, was repealed, modified, or superseded by that of 1866, the Board would still derive its power from the first named Act, and, in its exercise, must proceed in accordance with its provisions.

The Act of 1866 does not *in terms* repeal, modify, or supersede that of 1862.  If it does so, it must do it by implication, by the necessary effect of its provisions.   Repeal by implication is not favored in the judicial construction of statutes. Courts will not hold that a prior statute is repealed wholly or in part by a subsequent statute, unless such repeal is in terms expressed, or necessarily results from the provisions of the later statute.   (32 Cal. 515.)

We claim that the real object of the Legislature in enacting the statute of 1866 was to enable property holders to compel the adoption of the Nicolson pavement on any street—not to forbid its adoption when not petitioned for by such property holders.   The object was to facilitate its adoption—not to restrict it.   We claim that whereas the Board may or may not adopt any other kind of pavement at its own pleasure, they *must* lay down the Nicolson pavement whenever requested by a majority in frontage of the property holders along any street in the city.   Such a construction of the Act

of 1866 does not involve any repeal by implication of the Act of 1862, but leaves both the statutes to stand, each with its appropriate function and object, each in full force and effect.

It may be that the Legislature ought to have excluded any pavement the right to lay which was held under a patent, and in respect to which there might, therefore, be a want of equality amongst bidders; or any pavement, in respect to which one bidder happened to have advantages over all others. But the Legislature not having done so, the Courts cannot do it. Suppose it was a cobble-stone pavement, and the stone required to be used could only be obtained from one locality, and was all owned by a single person: that fact appearing, would it follow that the cobble-stone pavement could not be built because there could be no fair competition? In the one, there is the fact of the exclusive ownership of all the material required to be used; in the other, the fact of the exclusive right to use the material. It may be said, the law will presume that the owner of the cobble-stones will sell them to any person who will buy, and therefore all bidders will stand upon an equality. But the law will equally presume that the owner of the patent right will sell his right to any person who may wish to purchase. The exclusive right is but property, like the ownership of the cobble-stones, and the two are valuable not merely for use by the owner, but for sale. The owner of neither can be compelled to part with his property, but the law presumes that the owner of each of them will do what his interest dictates and what is in accordance with the regular and usual course of business.

By the Court, SANDERSON, J. :

The principal question involved in this case, and the only question which we propose to consider, relates to the power of the Board of Supervisors of the City and County of San Francisco to cause the streets of the City of San Francisco to be paved with what is known as the Nicolson pavement. We shall consider, first, the power of the Board in relation to the Nicolson pavement, under the general law upon the subject of street improvements, as passed in 1862, and amended in 1863, (Stats. 1862, p. 391; 1863, p. 525;) and second, the power of the Board in relation to the improvement of streets, as affected by the statute of 1866 in relation to the pavement of streets with the Nicolson pavement, (Stats. 1865–6, p. 720,) so far as the exigencies of the present case require.

We repeat what we have so often had occasion to say, that in the matter of street improvements the Board of Supervisors have whatever power the statutes upon that subject have conferred upon them, and no other; and that the power which they possess must be exercised in the mode prescribed by the statute, and in no other; for, as was well said by Mr. Chief Justice FIELD, in *Zottman's Case,* 20 Cal. 102, " the mode in such cases constitutes the measure of the power." With this principle kept steadily in view, little difficulty will be found, we apprehend, in solving the questions presented by the record in this case.

By the third section of the Act of 1862 the Board is empowered to order the whole or any portion of a street to be " paved " or " repaved." By the succeeding sections it is provided how and by what proceedings they shall exercise the power so conferred. They may move in the matter of their own volition, (Sec. 4,) or upon the petition of the owners of more than one half of the frontage (Sec. 5); but in either case they are required to proceed by first publishing a notice for the period of ten days of their intention in the premises. If nothing intervenes to stay further action, they

89

are next required to advertise for sealed proposals or bids for the contemplated work. (Sec. 6.) The bids being in, they are next required in open session to open, examine, and publicly declare the same, and thereupon award the work to the lowest responsible bidder. They are next required to publish a notice of such award, and to allow the owners of the major part of the frontage to take the contract upon the same terms, if they shall so desire. If the owners do not elect to take the contract within the specified time, it is then to be given to the bidder to whom it was awarded.

From this mode, as already stated, the Board has no power to depart—it is their chart and compass—it is "the measure of their power." The policy of the statute is apparent—it is to secure and protect the persons who are made to pay the cost of improvement from official mismanagement and abuse—from the reckless or wanton exercise of power, by advising them of what is proposed to be done, by enabling them to do the work themselves, if they so elect, and especially by securing the performance of the work by responsible persons, upon the lowest terms. This policy cannot be defeated by setting aside the measures which have been provided for its enforcement; to do so would be to nullify the will of the Legislature, and brush aside all the safeguards which that body has provided for the protection of the property holders of San Francisco.

If, as already stated, the mode is the measure of the power, it necessarily follows that the Board has no power to do any kind of work which, for any cause, cannot be let or contracted for in the prescribed mode, or which the owners of the frontage are legally prohibited from performing. It is true that the third section, which confers the power to "pave," does not restrict the Board to any particular kind of pavement, and if the question turned exclusively upon that section, the Board would have the power to contract at its election for any kind in use; but the power to "pave," so far as the Board is concerned, is the power to *contract* for a

pavement, and the power to contract is limited by the mode in which the contract is to be let, and no contract can, therefore, be made to which that mode cannot be beneficially and in good faith applied.

The case shows that the Nicolson pavement is an invention which has been patented under the laws of the United States, and that the plaintiff alone owns and holds the right to put it down in the streets of San Francisco.

To advertise for sealed proposals where there can be but one bidder, to open them in open session, to examine and publicly declare them, and thereupon award the work to the lowest responsible bidder, where there is and can be but one, to notify the owners of the frontage, if they so elect, to come forward and perform work which by the paramount law of the land they are prohibited from performing under heavy responsibilities, would be to play as broad a farce as was ever enacted behind the footlights. The law does not permit itself to be thus trifled with, nor allow its ministers to thus substitute pretense for performance.

From what has been said it follows that whatever power the Board has in relation to Nicolson pavement must be considered as coming from the statute of 1866. Under that statute the power can be exercised only upon the petition of a majority of the owners, or their agents, in frontage, and upon the condition that the pavement shall not cost to exceed twenty-eight cents, in coin, per square foot. The case shows that the Board acted without any petition on the part of the property owners, and it therefore follows that their proceedings were also void under the Act of 1866, as well as those of 1862 and 1863.

Judgment and order reversed.

SPRAGUE, J., dissenting :

I dissent from the conclusions arrived at by my associates. The questions discussed in the prevailing opinion are to be determined by the statute of April 2d, 1866, entitled "An Act to provide for paving the streets in the City and County of San Francisco," (Stats. 1865–6, p. 720,) in connection with sections three, four, and five of the statute of April 25th, 1863, entitled "An Act amendatory of Article IV of an Act entitled an Act to repeal the several charters of the City of San Francisco, and to consolidate the government thereof, approved the 19th day of April, 1856, repealing sections thirty-six to sixty-four, inclusive, and Acts and parts of Acts amendatory and supplementary thereof, and substituting this Act for said Article IV." (Stats. 1862, p. 391.) These two Acts, so far as relates to the subject matter of paving streets, etc., in the City and County of San Francisco, are *in pari materia*, and must be read and construed together. (*People ex rel. Board of Harbor Commissioners* v. *Broadway Wharf Company*, 31 Cal. 33; *McMinn, Exr.* v. *Bliss et al.*, 31 Cal. 122; *Taylor* v. *Palmer*, 31 Cal. 240.)

"When there are two laws upon the same subject, they must be so construed as to maintain both, if it can be done without destroying the evident intent and meaning of the latter Act. The law does not favor a repeal by implication, and, unless the former Act be referred to, or is clearly repugnant to the provisions of the latter, both must stand." (*Merrill* v. *Gorham*, 6 Cal. 42; Sedgw. on Stat. and Const. Law, p. 127.)

Says Mr. Chief Justice Nelson: "As laws are presumed to be passed with deliberation and with full knowledge of all existing ones on the same subjects, it is but reasonable to conclude that the Legislature, in passing a statute, did not intend to interfere with or abrogate any former law relating to the same matter, unless the repugnancy of the two is irreconcilable. Hence a repeal by implication is not favored; on the contrary, Courts are bound to uphold the prior law if

the two Acts may well subsist together." (*Borven* v. *Lease*, 5 Hill, 226; *Canal Company* v. *Railroad Company*, 4 Gill & Johns. 1.)

Where both Acts are merely affirmative, and the substance such that both may stand together, both shall have concurrent efficacy. (1 Bl. Com., 89; *Dr. Foster's Case*, 6 Cope, 107; *Bank* v. *Commonwealth*, 10 Barr, 448.)

Upon a careful examination of the two statutes above referred to, I am entirely satisfied that, although relating to the same subject matter, they are not, in terms or intent, repugnant or inconsistent.

The manifest design and purpose of the statute of 1866 is to secure the Nicolson pavement wherever a majority of the owners "in frontage of any lot or block of land, fronting on any street, lane, alley," etc., shall express, in the manner provided, a desire and preference for that particular kind of pavement, and to provide a means by which the wishes of such majority may control the discretion of the Board of Supervisors as to the kind of pavement to be laid; and as a protection to the minority of owners in frontage, in case of action upon petition of such majority, the Act fixes a limit to the cost of such pavement.

Under the Act of 1862 the Board of Supervisors has unlimited discretion as to the kind of pavement to be adopted; and proceeding under that Act, in the manner therein provided, they might (as in this instance) adopt the Nicolson pavement, or any other kind of pavement.

Admitting that the mode of exercising the power, as prescribed by the statutes, is the measure of the power conferred upon the Board, and that in the exercise of the power in accordance with the prescribed mode, it might occur that some one of the safeguards provided by the statute for the protection of lot owners is necessarily weakened or wholly destroyed, it would not, I apprehend, follow as a necessary result that the power is impeached or nullified, nor should such a result follow as a consequence of the partial inadaptability of the mode to a particular subject matter clearly

embraced in the special grant of power. The Legislature has delegated the power to pave streets in the most comprehensive terms, and prescribed the mode of its exercise, and clearly, by the passage of the Act of April 2d, 1866, indicated one mode of exercising the power of paving the streets of San Francisco with Nicolson pavement, and the question as to whether the prescribed mode is properly adapted to the particular kind of pavement, is referable to the Legislative, and not to the Judicial Department of the Government.

It is assumed by appellant that inasmuch as the right to lay down Nicolson pavement is by letters patent secured to and held by a single individual or company, it is impossible, under the mode prescribed, to secure to the parties who are assessed for the improvement the benefit of competition in the price of the work, or the right to perform the work themselves at the rate of the lowest bid. With greater propriety it may be assumed that the right to lay down this particular kind of pavement is available to any and all alike who may desire to use it upon any particular street or block, by paying to the owners of the exclusive right a specified sum for each square foot or yard of such pavement which they might desire to lay down, or a percentage upon the contract price of the work; that this exclusive right in the hands of its holders is property, or a commodity in market for sale in limited measure to all and any who are willing to pay for the same at its market value, and that any and all persons who may desire to enter into competition in the performance of the labor and furnishing the materials in the construction of this pavement may obtain the right from the patentee or his assigns, and that the property owners may do the same, if they should elect to do the work in the same manner and to the same extent as any other commodity or materials necessary to be used in the construction of the proposed improvement. I have been unable to appreciate the fatal objections to the practicable application of the mode prescribed, when applied to Nicolson pavement, which seem to be invoked to negative the power of the Board.