No. 1918.—BURGESS, BENNETT, et als., *v.* THE CITY OF JEFFERSON, et als.

Paragraph twelve of section seven of the charter of the City of Jefferson (Laws of 1867, No. 57), requires that all contracts for opening, widening, paving, and improving the streets, authorized by the Common Council shall be adjudicated by the Controller, under regulations prescribed by the Council, *to the lowest bidder.* An adjudication by direction of the Council, by the Controller, of a contract for paving one of the streets of the city with the *Nicolson pavement* to a firm or company having the exclusive right to make such pavement within the limits of the State of Louisiana is in conflict with this provision of the statute; and the owners of property fronting on the street paved with this kind of pavement by a company having the exclusive right, cannot be compelled to pay the two-thirds of the cost of making the pavement.

The principle of competition enunciated by the statute must be observed by the Council in letting out contracts for the improvement of the streets, otherwise the owners of property fronting on the streets improved cannot be compelled to pay the charges assessed against them for making the improvement.

A PPEAL from the Second Judicial District Court, parish of Jefferson. *Duplantier, J.   A. N. & H. N. Ogden,* for plaintiffs and appellants, *J. Hawkins* and *Fellows & Mills* and *H. J. Leovy* for defendants and appellees.

HOWE, J.   On the twenty-second April, 1867, a number of front proprietors on St. Charles avenue, in the City of Jefferson, petitioned the city for certain flag walks and for the paving of the street with the "Nicolson pavement." A list of their property and its dimensions was annexed, and the City Surveyor certified that the property signed for exceeded one half of all the property fronting on the avenue in the limits of the city of Jefferson.

On the twenty-fourth April the Council adopted a resolution or ordinance, directing the Controller to adjudicate contracts for the paving, and also for the curbing, to the lowest bidder, after advertisement, at such place and time as should be designated by the Controller. As to the paving, the resolution required the work to be done in strict accordance with the requirements of the patent.

The Controller advertised the sale to take place on the eleventh May. On the same day A. D. Voisin enjoined the city from further proceedings, and the sale was postponed.

At a meeting of the Council, May 13, a petition was read, signed by property holders on St. Charles avenue, among whom were the owners of several hundred feet front, represented in the original petition, protesting against the sale of the contract. This petition was referred to a special committee, who, on the twentieth of May, reported that they had examined the matters complained of, and had ascertained that a majority of the front proprietors had originally petitioned for the improvement, and they therefore reported against the memorial of the petitioners.

On the fifteenth May, Mr. Voisin dismissed his suit and injunction, and on the twenty-fifth May the Controller adjudicated the contract for paving to Messrs. Taylor & Lockwood, at $3 50 per square yard, and the contract for curbing to John Rooney, at $1 per running foot.

On the twenty-ninth May the Council, by resolution, approved these adjudications, and the Mayor was empowered to enter into proper contracts by notarial act.

On the thirty-first May, the Mayor entered into a contract with Messrs. Taylor & Lockwood for the paving of the street with the Nicolson pavement. This contract is in conformity to and embodies the ordinance.

It is probable that a similar contract was entered into with John Rooney for making the curbs, but we do not find it in the record, and as will be seen, its merits are not before us.

On the twenty-fifth June, 1867, the plaintiffs, owners of property fronting on the avenue, and liable under a provision of the charter, hereinafter referred to, to be specifically assessed for their proportion of two-thirds of the cost of paving, and the whole cost of the curb, filed the petition now before us, praying in substance that the ordinance for the adjudication of the contracts be decreed to be illegal, null and void; that the City of Jefferson be enjoined from proceeding to collect from petitioners any portion of the contract price of said works by virtue of any clause in the charter rendering the petitioners as front proprietors, separately from other owners of property in the city, responsible for the cost of making banquettes and paving streets; and that it also be decreed, contradictorily with the contractors (who were made parties defendant), that the City of Jefferson has no rights against the property of petitioners in front of which the improvements were being made.

The court rendered judgment in favor of the plaintiffs in accordance with their prayer, as to the contract for the Nicolson pavement; but against petitioners as to the contract of Rooney for curbing. As to the latter, the plaintiffs have not appealed, and we cannot inquire into that

portion of the judgment. From the portion of the judgment which concerns the paving contract, the defendants, the City of Jefferson, and the Southern Paving Company, subrogated to the rights of Taylor & Lockwood, have appealed.

The plaintiffs presented a number of points in the court below, but the court based its judgment so far as it was in their favor as to the paving upon one ground, namely: that the Nicolson pavement is a patented improvement, that the contractors, Taylor & Lockwood, held the exclusive right to lay such pavement in the State of Louisiana, and that therefore the competition which the law intended at an adjudication to the lowest bidder could not take place.

In the view we have taken of the case this is the only point that requires decision.

By paragraph six of section seven of the charter of the City of Jefferson (Laws of 1367, No. 57), the Common Council has power to lay an annual tax of one-half of one per centum for making improvements of streets and public works; by the tenth paragraph it has entire control of all the streets, levees, wharves and sidewalks of the city; by the eleventh paragraph it may make loans to pay for necessary ameliorations and improvements within the limits of the city (of which, in this climate and with our soil, paving is surely an important one), and by paragraph eighteen it has power to open, widen, straighten, extend or improve any street, road, sidewalk or public place.

The twelfth paragraph of the same section reads as follows:

"When the proprietors of land fronting on any public street or avenue, comprising one-fourth of the front on said street, shall petition the Council therefor, the Council shall cause the streets to be opened, widened or improved with banquettes, sidewalks, shell or plank roads, or paved streets, if after thirty days notice in the official journal a majority, similarly constituted, of front property owners shall not object thereto. The crossings and intersections of the streets and one-third of the roadways in front of the property shall be at the expense of the city, and the sidewalks or banquettes and one-third of the roadway or street at the expense of the property owners in front of whose property the same shall be made; *provided* all such work shall be done by contract, adjudicated by the Controller, under the regulations to be prescribed by the Council, *to the lowest bidder ;* and, *provided further,* that said contractors shall be subrogated to the rights of the city against the property in front of which such improvements may be made, releasing the city from any liabilities for the same; and *provided further,* that the bills for such work, certified by the City Surveyor, and audited by the Controller, when recorded, shall have a lien and privilege in favor of the contractor upon said property for five years from the issuing of the bills for the amount thereof with interest, over all other claims and demands whatever, except that of the city, State, and national taxes."

19

It will be at once perceived by an examination of this charter that when the City of Jefferson exercises its general powers to improve a street, it is not bound to advertise for proposals or to adjudicate a contract to the lowest bidder. These formalities are only required when it proceeds under the twelfth paragraph quoted above.

It has therefore been urged by defendants that under these general powers the city had the right to cause the pavement to be made, and to charge two-thirds of the cost upon the front proprietors as, they allege, was customary in New Orleans and Lafayette prior to 1850, under powers no more extensive, and this course, they say, was held to be legal by a series of decisions of this court from 1830 to 1850. 1 La. 1; 7 An. 26; 10 An. 57. It is not necessary to decide this point in this case.

..Admitting that the Council had the right under its general powers to cause this pavement to be laid, and of this we think there can be no doubt; and admitting, for the sake of argument, that it had the right to charge two-thirds of the cost, as an equitable proportion, on the front proprietors, it is plain that in this case it exercised only the former and not the latter right.

It directed the work to be done, and under its authority a contract to do the work was made, and thus far the proceeding was valid, but it did not proceed under its general powers, if such it had, to ordain an equitable assessment on front proprietors in proportion to the supposed benefit derived. On the contrary, as will appear by the ordinances and the contract, it proceeded under the special provisions of the twelfth paragraph, so far as front proprietors were to be bound, and, referring to these provisions, and not otherwise, took proceedings, which, if they had conformed to the requirements of that paragraph, and not otherwise, would have bound the front proprietors to pay two-thirds of the cost of paving; would by operation of law have subrogated the contractor to the rights of the city, releasing the city from liability *pro tanto*, and created a privilege on the property of the front proprietors.

In this view the question of the right to advertise for bids for a patented improvement, which can only be used by one person or company in the State, is, in this case, to be solved by a consideration of the stringent provisions of this twelfth paragraph alone. Upon this point, with this restriction, we do not think the court *a qua* erred in its conclusion. There could have been no real and practical competition for the work of paving in this case. One of the most intelligent of the defendant's witnesses admits this, and it would sufficiently appear without his evidence. And that an opportunity for real competition is a condition precedent to rendering effective the peculiar provisions of this twelfth paragraph is too plain to require argument. The power of a small minority to compel initiation of the work, and of a bare major-

ity to permit its completion, and the imposition of its burdens, is too grave to be exercised, except with a full compliance with the letter and the spirit of the clause. We are constrained to conclude that in so far as the city seeks through this clause to assess the plaintiffs, the act has been violated. We are fortified in this conclusion by the authority of the Supreme Court of Wisconsin in the case of Dean v. Charlton, 7 A. M. Law Reg., N. S. 564. In opposition to this view we have been referred to a recent decision of the Supreme Court of Michigan in the case of Hobert v. the City of Detroit, and to still more recent decisions of the Supreme Court of New York in the cases of Astor v. the Mayor, and Dolan v. the Mayor. In all these cases there was a feature which is not present in the case at bar. The defendants there were absolutely forbidden by their charters from contracting for any work, or even purchasing any supplies of any kind exceeding $200 or $250 in amount without advertisement and letting to the lowest bidder. In view of a provision which would seem to cut off those cities from the benefit of any patent however desirable, the courts in question seem to have been constrained in the interests of what they believed to be public policy, to adopt a line of reasoning which we do not feel authorized to follow. We are told by our Code, art. 13, that "when a law is clear and free from all ambiguity the letter of it is not to be disregarded under the pretext of pursuing its spirit;" and in this case we are relieved from any temptation toward a construction thus reprobated. The City of Jefferson is not prohibited from laying any sort of pavement in her streets, and may in this regard keep step with the progress of science and inventive skill. It is only when her action is provoked under the special paragraph we are now considering, that she is bound to afford an opportunity for real competition. If this system be inconvenient it is for the legislator to furnish a remedy.

It will be seen, however, that in one respect the judgment appealed from is erroneous, in so far as it declares the ordinance under which the contract was made null and void. The Council had a right under its general powers to order the work to be done and to authorize the Mayor to make the contract for that purpose. There are neither allegations nor proof in the case which would authorize us to pronounce the entire nullity of this action or of the action of the Mayor. So far as appears the ordinance and the contract are valid as between the city and the contractors. It is only in so far as by necessary intendment the front proprietors are held to the city for two-thirds of the cost and the contractors subrogated to the city's rights, releasing the city from liability pro tanto, and a privilege on property created, that the ordinance and action under it can be declared void.

The plaintiffs are amply secured and protected by the remainder of the judgment appealed from. It is therefore ordered and adjudged that said judgment as to such portion thereof as declares the nullity

and illegality of the ordinance in question be reversed, and that in all other respects the said judgment be affirmed, the defendants to pay the costs of the court below and the appellees to pay the costs of this court.