Kilvington and another vs. The City of Superior.

KILVINGTON and another, Respondents, vs. THE CITY OF SUPERIOR, Appellant.

*September 27 — October 25, 1892.*

*Municipal corporations: Power of village to contract for patented crematory for garbage.*

1. Under the general power, given by subd. 20, sec. 892, R. S., to prevent or abate nuisances, a village board may contract for the building of a crematory for garbage, dead animals, etc.

2. The fact that the mode of building the crematory was patented, did not render a contract therefor invalid under sec. 921, R. S. (requiring it to be let to the lowest bidder), where the entire work was done at the general expense of the village, and the use of the patent was offered to the village and to all contractors at a fixed price, and there was free competition as to everything else. *Dean v. Charlton*, 23 Wis. 590, distinguished and limited.

APPEAL from the Circuit Court for *Douglas* County.

This action was brought upon a contract made between one McCann and the village of Superior, organized under ch. 40, R. S., and acts amendatory thereof, for the erection of a crematory according to the *Kilvington* patent for the destruction of garbage, dead animals, etc. The work was let to the lowest bidder, but prior thereto *Kilvington*, the owner of the patent for building the crematory, appeared before the village board while in session, and agreed he would allow it and its legal successor the use of his patent and improvements as long as it should be operated by it, for a total sum of $1,500, and he would superintend the construction if they would pay his expenses to Superior and while there superintending the work; also that any contractor who took the contract of erecting the crematory could have his said patent and services at the same rate; that such facts were generally known and publicly stated both before the board and throughout the village, and were generally known among contractors in that kind of work. McCann, having been the successful bidder, entered into contract to build the crematory according to said patent and improvements for $4,500, upon premises to be designated by the village. On the day of making the contract *Kilvington* entered into a contract with McCann to furnish the patent, render services, and superintend the erection of the crematory for the sum of $1,500, as he had promised. A place for erecting it was designated, and the work was commenced.

The city of *Superior* was organized in the year 1889, and succeeded to all the liabilities and rights of the village. McCann continued the work until the 22d of April, 1889, and was willing to go on with it, but the board of public works refused to permit him to proceed to complete the contract; and he had expended and become liable for $2,091.39, and his profits on the completion of it would

Kilvington and another vs. The City of Superior.

have been $900. He assigned over his claim against the city on said contract to the respondents, *Kilvington* and *Paden*, and they presented it to the common council, when it was disallowed, and the respondents appealed to the circuit court, where they filed a formal complaint on the said contract, and claimed damages, as above stated.

The defendant demurred to the complaint. The court overruled the demurrer, and the city appealed to this court, and claimed (1) that the contract was void, on the ground that the village board had no power, express or implied, to contract for the erection of a garbage crematory; (2) that, if it had such power, then the work of building it according to the *Kilvington* patent could not be let to the lowest bidder in the mode prescribed by law, because it was a patented method and could not be the subject of competition in bidding for the work.

*Phil. H. Perkins*, for the appellant.

For the respondents there was a brief by *Reed, Grace, Rock & Reed*, and oral argument by *H. H. Grace*.

PINNEY, J. The village of Superior was a public corporation created for purposes of local civil government. All its powers "not specifically given some other officer" were vested in its village board. The contract, for a breach of which this action is brought against the city of *Superior*, the successor in interest and liability of the village, was entered into by and between the board of trustees of the village of Superior and McCann, the assignor of the plaintiff, for the construction, at a designated place, of a furnace known as the "Eagle Garbage Cremating Furnace," with *Kilvington* improvements and all processes for consuming by fire manure, garbage, and dead animals, as a means of conserving the health of the city and of abating nuisances and preventing sickness and disease. The authority of the village to make the contract is denied. It is urged that

the village board had no power, express or implied, for that purpose. Aside from what may be fairly considered within the general powers of the village to carry out the public purposes for which it was created, the village board had express power "to appoint a board of health, . . . to declare what are nuisances, and to *prevent or abate* the same; . . . and to prevent persons from bringing, depositing, or leaving within the village any putrid carcass or other unwholesome substance; to require the owners' or occupants of lands to remove dead animals, stagnant water, or other unwholesome substance from their premises;" and "to ordain and establish all such ordinances and by-laws for the government and good order of the village . . . and the promotion of health, not inconsistent with the constitution and laws of the United States or of this state, as they shall deem expedient." R. S. sec. 892, subd. 20, 26. The powers vested by subd. 26 were to be exercised by ordinances and by-laws, and being for the enactment of general and permanent rules, cannot, it is contended (and many authorities are cited to that effect), be exercised in any other manner; while the powers conferred by subd. 20 may be exercised "by ordinance, *resolution*, law, or *vote*." Sec. 892. The power "to prevent or abate nuisances"— that which occasions public hurt or inconvenience — is necessarily a very broad and comprehensive one, and essential, if not indispensable, to the purpose for which the village was created. It would hardly be questioned by any one that if garbage, manure, or dead animals were found within the village, in the interest of good order, cleanliness, and public health the board of trustees would have power to abate such nuisances by removing or otherwise making suitable disposition of them. To this end it might provide for destroying them, instead of fouling the waters of a lake or stream of water with them, to be again cast up, to the prejudice of the public, or depositing them where they

would create a new nuisance. To this end, if a garbage crematory becomes necessary, the board may, within a fair and *bona fide* exercise of their discretion, contract for its construction, and the village will be bound by the contract.

Speaking of the powers of such corporations in *Spaulding v. Lowell*, 23 Pick. 74, SHAW, C. J., says: " They can exercise no powers but those which are conferred upon them by the act by which they are constituted, or such as are necessary to the exercise of their corporate powers or duties and accomplishment of the purposes of their association." *French v. Quincy*, 3 Allen, 12. This rule has often been affirmed in this state with the just qualification that such corporations may resort to the usual and convenient means of executing the powers granted; that is to say, as applied to this case, that the village, in order to prevent or abate nuisances, might resort to such means as were usual and convenient. *Mills v. Gleason*, 11 Wis. 491; *Gilman v. Milwaukee*, 61 Wis. 592; *Bell v. Platteville*, 71 Wis. 142; *Meinzer v. Racine*, 68 Wis. 241, 245. The power to prevent and abate nuisances is an express grant of power, and not an implied one; and " it has long been an established principle in the law of corporations that they may exercise all the powers within the fair intent and purpose of their creation, which are reasonably proper to give effect to powers expressly granted. In doing so, unless restricted in this respect, they must have a choice of means adapted to ends, and are not confined to any one mode of operation," and their discretion in this respect cannot be revised or interfered with by the courts, except where the substantive power is exceeded, or fraud is shown, or there is a manifest invasion of private rights. 1 Dill. Mun. Corp. §§ 91, 94, and cases cited; *Benson v. Waukesha*, 74 Wis. 32, 39; *Kelley v. Milwaukee*, 18 Wis. 83, 85; *Schanck v. Mayor*, 69 N. Y. 444; *Spaulding v. Lowell*, 23 Pick. 71, 80. It was not necessary, therefore, that there should have been ex-

press power conferred on the village to build, or contract for building, the crematory. The village board might contract for it as a means adapted to the end of preventing or abating nuisances, and as a health measure, and so within the general purpose for which the village was organized.

2. Upon the authority of *Dean v. Charlton*, 23 Wis. 590, it is contended that, as the mode of building the crematory was a patented one, the contract was void, on the ground that there could not be fair competition in bidding for the work, which by the charter was required to be let to the lowest bidder. R. S. sec. 921. The case of *Dean v. Charlton* was decided by a divided court, and there was a vigorous and able dissenting opinion by Chief Justice DIXON. The legislature subsequently validated the assessments so held void in that case, and in *Mills v. Charleton*, 29 Wis. 400, and *Dean v. Borchsenius*, 30 Wis. 236, the validity of this legislation was sustained. Since that time the direct question involved in that case, which was in respect to assessments against abutting lots for paving the street, has not been before the court; but in *Dean v. Charlton* the majority of the court, after commenting upon the case of *Harlem Gas Co. v. Mayor*, 33 N. Y. 309, expressly disclaimed deciding whether the city might not have contracted for laying such pavement at *its own* expense, under its general municipal powers, which is really the question here presented. In view of the legislation which followed *Dean v. Charlton*, and the fact that it was decided by a divided court, and the general tenor of subsequent decisions, and the further fact that patented methods and processes now enter so largely into various classes and kinds of public work, we are not disposed to extend the rule of that case beyond the particular point there decided. In *Hobart v. Detroit*, 17 Mich. 246, and *Motz v. Detroit*, 18 Mich. 515, decided at about the same time, a contrary con-

Kilvington and another vs. The City of Superior.

clusion was reached; and in *Nicolson Pavement Co. v. Painter*, 35 Cal. 699, and *Burgess v. Jefferson*, 21 La. Ann. 143, the rule of the majority of the court in *Dean v. Charlton* was sustained. Since then, in *In re Dugro*, 50 N. Y. 513, the question has been decided in conformity with *Hobart v. Detroit, supra*, and other like cases; and in *Yarnold v. Lawrence*, 15 Kan. 129, 131, Brewer, J., notices the diversity of judicial opinion on the question, and is inclined to favor the views of the courts of Michigan and New York. *Baird v. Mayor*, 96 N. Y. 567.

In the present case there was a definite, well-settled price for the patent and specifications, at which it was held and offered to the city and all contractors, which would limit the recovery of the patentee, so that in fact there was free competition for the work and materials and all else except the patent. The city had the benefit of all the competition of which the nature of the work admitted; and in such cases, where the entire work is done at the general expense of the city, the statute ought not to be so construed as to exclude the city from availing itself of desirable patented works or improvements, as to which there is but one price, and for which there can, in the nature of the case, be no competition, and when, for performing the work and furnishing materials, the advantage of competition is secured. While the rule of *Dean v. Charlton*, 23 Wis. 590, may be upheld as applied to assessments charged against abutting lots, where the lot owners have the right secured to them to construct in front of their property the improvements for or in which a patented method or process is used, we cannot see that there is any good reason to hold that the statute applies to the patented mode or process, when in respect to all else the statutory requirement of competition is secured. Under any other theory a municipal corporation would be obliged to forego the purchase and use of all

patented implements, modes, or processes, a result which we cannot think the legislature contemplated.

For these reasons the order of the circuit court must be affirmed.

*By the Court.*— Order affirmed.

See note to this case in 18 L. R. A. 45.— REP.