## PATENTED MATERIAL FOR STREET IMPROVEMENT AND COMPETITIVE BIDDING.

[Circuit Court of Lucas County.]

WILLIAM L. HOLBROOK, A TAX-PAYER, ETC., v. THE CITY OF TOLEDO ET AL.

Decided, March 31, 1906.

*Streets—Improvement of, with Patented Material—Not a Restriction on Competitive Bidding—Purpose of the Law as to Competitive Bidding — Municipal Corporations — Public Policy — Specifications Calling for Monopolized Material—Discretion in Selection of Material.*

Competitive bidding is not necessarily narrowed, but may be broadened, by admission to the competition of material which is monopolized by reason of patents; and in the exercise of a sound discretion, it is competent for the proper city authorities, in advertising for bids for a street improvement, to call for material which is covered, or the assembling of which is covered, by patents.

WILDMAN, J.; PARKER, J., and HAYNES, J., concur.

This is a case calling, perhaps, for the application of some of the principles which have been announced in the case of *Yaryan* v. *City of Toledo* (*ante*), just decided by this court. The case before us, however, involves the additional and interesting question as to whether the city, in calling for bids for a street improvement—in this case a pavement—may advertise for and accept a construction, the materials entering into which or the methods and proportions of assembling which, are covered by letters patent.

The petition in this case, while in no way alleging or suggesting any corrupt intent on the part of either the city officials or the contractor to whom the contract has been let—the defendant Streicher—contends that the letting of the bid and the making of the contract are an infraction of the spirit of the law which provides for competitive bidding.

It is urged that to permit a proffer of an improvement the right to make which and dispose of it to the city inheres in

some individual or company, deprives all other persons of an opportunity for legitimate competition and deprives the city of the benefit of such competition. The case is before us on appeal and was submitted upon a demurrer to this petition, the demurrer alleging that the petition fails to set forth facts stating a cause of action. After the formal averments of the petition, which I need not read, and in which proceedings are alleged for the improvement of Spielbusch avenue, in this city, and Cherry street market place, it is alleged that the bid of one Henry Streicher was accepted and an agreement entered into therefor; that said agreement is void ''and involves a misapplication of the funds of said city and an abuse of its corporate powers'' for the reason that the specifications for the construction of said improvement call for Warren's bitulithic pavement exclusively, and that certain elements entering into said pavement are covered by letters patent issued by the United States government to the Warren Brothers Company, a corporation; ''that the machinery and appliances for laying said pavement, and the process of mixing the material used in said pavement are also covered by letters patent issued by the United States government; that all of these patents are owned exclusively by said Warren Brothers Company, and by reason thereof no person can make use of any of the machinery, appliances, methods or material so covered by said letters patent save and except upon the consent of said Warren Brothers Company to such use upon such terms as the said Warren Brothers Company may see fit to exact, by reason whereof there could not be and was not such competitive bidding for the improvement of said avenue and market place as is contemplated by the laws of the state of Ohio; that the city of Toledo had not, before said bids were received or before said agreement was executed, acquired the right to secure, at a reasonable cost, the right of said patents or any of them, with respect to said improvement, for any successful bidder for the work, and the bidders were not placed by said city, in that respect, on substantially equal terms; that while the said notice to contractors called for bids on various kinds of pavement, the said board of public service expressly reserved the right to reject any and all bids for such kinds of

pavement as were open to equal and fair competition and accept the bid of said Henry Streicher for the only kind of pavement which was controlled exclusively by said Warren Brothers Company and permitted no competition.''

Again it is alleged ''that said specifications called for the use of a patented and monopolized material and process, owned and controlled exclusively by Warren Brothers Company, which tended to stifle competition among bidders on said improvement and to prevent the letting of said contract to the lowest and best bidder as required by the laws of this state.''

Upon the basis of these and some other alleged facts incidental thereto, the plaintiff prays for an injunction to restrain the defendants and each of them (the defendants named other than said city and said Streicher being members of the board of public service of the city of Toledo) ''from taking any steps or performing any act under the terms of the agreement hereinabove set forth, and enjoining the said Henry P. Streicher from commencing or doing any work whatever upon said Spielbusch avenue and Cherry street market space, under said agreement'' and further praying ''that upon final hearing the said agreement for said improvement may be declared to be null and void and the defendants and each of them perpetually enjoined from performing or attempting to perform the same; and for such other relief as may be proper and equitable in the premises.''

The question primarily involved is almost a novel one in Ohio. It has not been expressly passed upon in any adjudication which has been called to our attention, or which by considerable research we have been able to find. It has been made a matter of dictum in three cases at least in the state, but in no one of these cases does the question seem to have been discussed or is it expressly decided. The case of *Hastings* v. *Columbus,* 42 Ohio St., 585, does not decide it. There the city, prior to the advertising for bids, had acquired the right to the use of a patent, and the Supreme Court was not called upon to determine what would have been the effect of an attempt to construct such a pavement after the advertising for bids and the letting of a contract without having previously acquired such right, and the point decided by the court which bears even incidentally

upon the question at bar, is made the subject of but brief mention and without any special discussion of the principle. The language on the subject is found in a paragraph on page 595. I will not read it.

In a case in the 21st Circuit Court Reports, *Polhamus* v. *Board of Education,* page 257, Judge Laubie furnishes us with a dictum indicating his opinion that a city would not have a right to accept a contract for a patented improvement. But in so expressing his individual opinion he uses phraseology almost conveying the impression that had the question been one involved in the case, the decision would have been adverse to the opinion expressed by him, by reason of lack of accord with his views entertained by the other members of the court. This fact is not so clearly indicated by him, however, that it is well to place much emphasis upon it.

In a case decided by our own court, *Ohio, ex rel Bryce,* v. *Board of Education of the City of Toledo,* 7 C. D., 338, we have a somewhat emphatic expression by Judge King of his judgment that our law does not prohibit the advertising for the use of a patented invention for the heating and ventilating of public structures. While, as in these other cases, the question here was not directly involved, I may delay for a moment to invite attention to some of his language, merely because it is the language of a former judge of our own court. The proceeding was one for mandamus, brought by the Bryce Furnace Co. to compel the letting of a contract to that company. The city had accepted a bid made by the Smead Furnace & Foundry Co., and was about to award a contract to that company, but the Bryce Furnace Company claimed that it was the lowest and best bidder and was insisting that the contract should be let to it. On page 341, Judge King says:

"The apparatus is known in these contracts, and in the exhibits as "the Bryce heating and ventilating apparatus." And it says (speaking of the petition) that the heating and ventilating system provided for in the contract is the fan blast system, which provides for 'heating the following rooms with warm air' (and describes all the rooms in the building, including the basement). A perusal of that is sufficient to indicate that this is a system of which this corporation owns the right,

although nothing is said about patents.    It is a system which it proposes to put into the building for heating and ventilating those various rooms.    And from the description given in the bid of the Smead Company, and from the allegations of the petition, it is plain enough that it is also a system which it devises and of which it is the proprietor.''

On page 342, the judge says:

''We have had occasion before to say in matters of this kind, and further reflection only strengthens our opinion upon it, that this suit has not yet been so framed as that the discretion which the law has given to these boards can be controlled, either by writ of mandamus or by an injunction, when it comes to the question of selecting an apparatus that is in the control of a single individual or a single company or firm.''

On page 343 he says:

''But after all, the board is not required to finally adopt a system whose owner has bid a lower sum for putting into a public building than the owner of some other system.    It can leave the question of determining finally what system it will adopt for consideration after all the bids are in.    The question of price, manifestly, might have some influence with the board of education in determining which one it would accept, if all of them, or two or three of them are substantially equal in merit, but it would not be binding on the board to accept one because it was the lowest bid, although they might consider it. It still has the right which the law has given it, to reserve the determination of the particular system it will adopt until after the bids are opened, especially where those systems are largely covered by patents; and we fail to see any way in which the law controls that discretion in the board of education.    *    *    * But for these things controlled by patents the market is not free and open.    It is controlled by a single owner.    We know of no way which the law can regulate that.    We do not believe that you can control the discretion of the board of education to adopt the system after the bids are in, nor do we think it would be wise to do it.    So long as it is the privilege of the inventor to secure from the United States government the right to his own inventions, and so long as the law protects him in that right, we see no object in saying that because some other person has a different patent, the owner of which bids a lower sum than the owner of this one, the discretion of the board to adopt one or the other should be controlled nor do we think it can be.''

I hardly know what the judge meant by this last phrase, or some of these last phrases, unless he had it in mind that the exclusive right to make and vend an article with regard to which the United States government has issued patents and which right is protected by the United States law, may not be the subject of restriction even by a legislative enactment of a. state. Something along this line is quite earnestly urged in the extensive pamphlet brief which was submitted by one counsel as a part of his argument in the present case, made by Edwin L. Harpham, counsel for the city of Evanston in a case pending at the time of this brief in the Supreme Court of Illinois. I am not much disposed myself to accept, without a good deal of consideration, the position that the state might not restrict the use of a patent right by a municipality in the state of Ohio; the question before us does not necessarily involve it; the question is, rather, as to whether in the course of the powers conferred upon the municipality by the Legislature, we find any expressed or implied qualification as to the use of those powers in the selection of material or in the manner of construction of an improvement which a municipality is authorized to make. The power of the city to pave streets is broadly given by the statute and in it there is set forth no express qualification of that right limiting the exercise of the power to the adoption of such means as are not exclusively controlled by individuals or concerns. So that we are driven to examine this question in the light of such adjudications as we can find and such principles as we may be disposed to adopt, to determine whether or not the principle of public policy invalidates the action of a city council in not confining its choice to articles which are open to general use and not controlled exclusively by patentees or otherwise.

The sole question is: Is the restriction which is contended for by counsel for the plaintiff to be implied from the law applicable to this case? As I have already intimated, no bad faith is alleged in the petition, or even hinted at, but it may be proper to inquire whether the purpose of the law which makes provision for competitive bidding for such contracts, is destroyed by the advertising for or the acceptance of such a contract as

the one let to the defendant, Streicher, in this proceeding. The object of the law probably is two-fold—I refer to the law making provision for competitive bidding. It is, on the one hand to enable the public to obtain that which by reason of its price and quality is the most desirable for it as an investment, precisely as an individual in buying an article will take into consideration both the price and the quality; and the other object of the law is to prevent as far as it may, improvidence and corruption on the part of municipal authorities; and it is fair to inquire as to what is the effect of permitting a board of public service in making its choice to take into account articles which are the subject of exclusive use by one or more individuals, as bearing upon these two objects of the law.

I shall discuss a little more fully not only the object, but what in my judgment is the result of such restriction as is here contended for. But, before reaching that, it is well to say that while in our own state no rule upon the subject has been expressly established, in either the court of last resort or any of the lower courts, so far as we have been able to find, there have been numerous adjudications, many of them entitled to the highest respect, in the courts of other states. As stated by counsel on behalf of the city in oral argument, the controversy seems to have been started in two early cases, in Michigan and in Wisconsin—the one in Wisconsin being decided a little earlier than the other, and in each of those cases there was a division of opinion on the part of the judges who rendered the decision. So far as time would permit, we have made examination of the numerous cases cited—not quite so critically, perhaps, as we should have been glad to do in all instances—but we have not felt altogether compelled to go through the reasoning of all of the judges in the decisions of the various states, because of the conceded fact that there is an irreconcilable conflict of authority between and among them. In the brief of counsel in the case of *Prindle* v. *City of Evanston*, the case to which I have already referred, I find them summarized in a manner which, so far as my investigation goes, seems to be justified. I have examined a number of cases with a view to ascertaining whether he was

correct in his conclusions as to the result of adjudications in the several states.  On page 28 of this brief he says:

"The Wisconsin view, as expressed in *Dean* v. *Charlton*, 23 Wis., 590, was that where the statute requires the contract to be let to the lowest responsible bidder, such statute applies to patented articles, and no competition is possible.  That view, however, has been materially modified by a later decision (*Kilvington* v. *Superior*, 83 Wis., 222).

"The Michigan view is that where the statute requires the contract to be let to the lowest responsible bidder, such statute applies to patented articles and all the competition possible is required.

"The New York, Pennsylvania, New Jersey, California and Tennessee view is that where the statute requires the contract to be let to the lowest responsible bidder, such statute has no application to the case of patented articles; that such statute was intended to regulate the exercise of and not to limit the power to purchase what was desired.

"The Missouri view is that where the statute requires the contract to be let to the lowest responsible bidder, such statute does not prevent the use of a patented article where it appears from the testimony that no other article is equally as good.

"The federal court view is that the courts have no right to review the discretion of the municipality in the selection of paving materials, even if such materials are patented."

A large number of cases might be cited, and I have been tempted to incorporate them into this opinion for such reference as it might be worth while to make of them later; but I will not encumber it with further citations of these numerous decisions, because, after all, in our own state it becomes a question of principle and a matter of reasoning to determine what rule should be adopted in view of our statute.  It may be said in passing that in many of these decisions of other states, indeed in the most of them that I have had occasion to examine, the phraseology used in the statutes is not that the contract must be let or may be let to the lowest *and best* bidder, but it must be let either to the lowest bidder, or, in most cases perhaps, to the lowest responsible bidder.  Probably in all cases where the statute provides that it shall be let to the lowest bidder it contemplates responsibility as essential before the letting of the contract.  It is contended by counsel for the plaintiff that

the assertion made that the early Wisconsin view expressed in *Dean* v. *Charlton, supra,* had been modified by a later decision in the case of *Kilvington* v. *Superior,* 83 Wis., 222, was a contention which could not be sustained in view of a type-written transcript of a still later opinion decided by the Supreme Court of Wisconsin and which typewritten opinion has been handed up as a part of the argument of counsel for the plaint-iff. This late case to which I have made reference is that of *Clarence J. Allen* v. *The City of Milwaukee et al.* It may not be very important to follow to its ultimate length the inquiry as to how the Supreme Court of Wisconsin has finally deter-mined this question, but it is interesting, in view of the fact that the Supreme Court of Michigan has steadfastly adhered to the opinion announced by Judge Cooley in the early case to which reference has already been made, *Hobart* v. *Detroit,* 17 Mich., 245. On page 227 of the 83 Wis., I find this comment upon the *Dean* v. *Charlton* case, *supra,* and some other adjudi-cations subsequently had in the state of Wisconsin, touching this question. I read:

"Upon the authority of *Dean* v. *Charlton,* 23 Wis., 590, it is contended that, as the mode of building the crematory was a patented one, the contract was void, on the ground that there could not be fair competition in bidding for the work, which by the charter was required to be let to the lowest bidder (Section 921, Revised Statutes). The case of *Dean* v. *Charlton* was decided by a divided court, and there was a vigorous and able dissenting opinion by Chief Justice Dixon. The Legislature subsequently validated the assessments so held void in that case, and in *Mills* v. *Carlton,* 29 Wis., 400, and *Dean* v. *Borchsenius,* 30 Wis., 236, the validity of this legislation was sustained. Since that time the direct question involved in that case, which was in respect to assessments against abutting lots for paving the street, has not been before the court; but in *Dean* v. *Charl-ton* the majority of the court, after commenting upon the case of *Harlem Gas Co.* v. *Mayor,* 33 N. Y., 309, expressly disclaimed deciding whether the city might not have contracted for laying such pavement at *its own* expense, under its general municipal powers, which is really the question here presented. In view of the legislation which followed *Dean* v. *Charlton,* and the fact that it was decided by a divided court, and the general tenor of subsequent decisions, and the further fact that patented methods

and processes now enter so largely into various classes and kinds of public work, we are not disposed to extend the rule of that case beyond the particular point there decided. In *Hobart* v. *Detroit,* 17 Mich., 246, and *Motz* v. *Detroit,* 18 Mich., 515, decided at about the same time, a contrary conclusion was reached; and in *Nicholson Pavement Co.* v. *Painter,* 35 Cal., 699, and *Burgess* v. *Jefferson,* 21 La. Ann., 143, the rule of the majority of the court in *Dean* v. *Charlton* was sustained. Since then, in *In re Dugro,* 50 N. Y., 513, the question has been decided in conformity with *Hobart* v. *Detroit, supra,* and other like cases; and in *Yarnold* v. *Lawrence,* 15 Kan., 129, 131, Brewer, J., notices the diversity of judicial opinion on the question and is inclined to favor the views of the courts of Michigan and New York (*Baird* v. *Mayor,* 96 N. Y., 567)."

There can be no escape from the conclusion that the judge who used that phraseology is himself doubtful of the correctness of the principle enunciated in the earlier case of *Dean* v. *Charlton,* and he expressly says, speaking for the whole court, that they are not disposed to extend the rule in that case beyond the particular point there decided. In the recent case decided by the Wisconsin Supreme Court, which, by the way, pertains to a bitulithic pavement, we are informed that subsequent to the *Dean* v. *Charlton* case the Legislature of the state had made special provisions as to how and when patented improvements might or might not be used. It became a matter of special legislative enactment, so that possibly it was not important for the Supreme Court in either of the cases, the one in the 83d Wis., or *Allen* v. *Milwaukee, supra,* to decide the precise question which is involved in the case now under consideration. It is enough to say that there has been a weakening in the judicial opinion in Wisconsin as to the impotency of a municipality to avail itself of a patented improvement irrespective of statutory enactments expressly referring thereto. It may be remarked that the Wisconsin rule as it started was based upon a statute which provided that a contract should be let to the lowest responsible bidder, and I shall have occasion to refer a little later to the power which is given the board of public service in Ohio in the construction of a like improvement, to let it to the lowest and best bidder, as bearing upon the question

whether a little more liberality is not given, or a little wider scope, to the exercise of authority by the board of public service in Ohio than was given to the municipal authorities in Wisconsin under the statute to which I have referred. We have in Ohio numerous adjudications drawing distinctions between governmental and what may be called proprietary or business powers of municipal corporations. This matter seems to relate more largely to the exercise of business powers—such powers as an individual might exercise in his own behalf—in the protection of private interests, and at the outset the query naturally arises, if an individual may buy that kind of a thing which suits his taste, which is best adapted to his needs and requirements, irrespective of the question whether it is or is not patented, why can not one hundred thousand, or two hundred thousand individuals who have joined in a great common project do the same thing? If one may do it, why may not many? To be sure there is no restriction upon the exercise of all sorts of powers by an individual, where restrictions may be called for to prevent improvidence or corruption on the part of trustees of a municipal society; but after all, if it is a benefit—and it surely is oftentimes—for an individual to obtain an article which is protected by letters patent, even if he has to pay a higher price for it, so it is surely a benefit to an aggregation of individuals sometimes to do the same thing. In the case of *Field* v. *Barber Asphalt Paving Co.*, 117 Fed. Rep., 925, it is held:

"Where a contract for the paving of a street with asphalt limited the kind of asphalt to be used to Trinidad asphalt, such fact, and the further fact that such asphalt was controlled by a single corporation, did not affect the validity of the contract."

And in the determination of the question, the federal judge announcing the opinion for the court, on page 929 of the report, says:

"An individual certainly has the right, in the erection of an improvement, to get that which he believes the best, and that which he prefers, regardless of the reason; and he should not defeat a recovery by showing that in fact something else was as good or better, or that the vendor had a monopoly. And why

should not the same holding be made as to a city? Can it be so that because the city concludes, although wrongly, that Trinidad is the best asphalt, that its contract must be canceled on a showing that the Trinidad is not the best, and that it is the subject of a monopoly?''

In other words, it is not for the court to say which is the best. Our Supreme Court has expressly held that as to these discretionary powers which are given, it is for the body to which the discretion is given and not for a judicial tribunal, which passes upon the procedure, to determine which is best. It is not for this court, in other words, to exercise the discretion as to the choice of a pavement, and unless in the exercise of the powers given to the municipal corporation or the board clothed with the power and acting for the municipality, such body has departed from the law or has exceeded the powers to it given, this court has no right to interfere. Now it may be said when we are considering this question as to whether free, fair and wise competition is interfered with by permitting the introduction of a patented article, that the patented article may be cheaper as well as better. It sometimes happens so. A person may have discovered a method by which some article may be manufactured by a patentable process far more cheaply than it could have been before such discovery, and to exclude him as a competitor when the question of the adoption of a patented or of a nonpatented article in improvements is involved, may be to prevent the purchase by the city of what it requires, at the lowest price, and we shall have a case of the city being compelled to take the unpatented article and pay for it a good deal more than perhaps it would have been necessary to pay for a thing which, although protected by letters patent, might well be sold by the exclusive owner at a lower price, because, perhaps, of a lower cost of production.

It has seemed to me, in the consideration of this question, that the ruling out of competition which involves both patented and unpatented articles is to *prevent* competition; that it interferes with competition because the scope is not so broad. Here we have a board of public service, and assuming its honesty of purpose and that it is endeavoring to obtain that which

is best under all the circumstances for the people of this municipality, advertising for the construction of a pavement and offering to bidders the choice of a number of kinds of pavement included among which is this bitulithic pavement. Now if the bitulithic pavement were entirely excluded from the category of those which might be under consideration, or the number with regard to which proposals could have been made to the city, there would be a lessening of competition to that extent; instead of fourteen alternatives there would be thirteen, and if there were other patented materials included in the category it would be still further lessened, and instead of making a broader competition we think it makes a restricted one.

The issuing of letters patent does not confer the only kind of exclusive use or the only kind of a monopoly that may be acquired or owned by an individual or any group of individuals. There are monopolies that grow out of circumstances inherent in nature; there is a monopoly which pertains to a particular skill or particular expertness in an individual, a native genius enabling him to do a thing better than any other man can do it. There is the monopoly which belongs to a proprietary interest in some particular coal mine, in some particular gravel-pit, or other source from which the products of the earth may be extracted for the benefit of man. Shall it be said that a municipality which desires to obtain a large quantity of coal may not encourage bidders among the owners of all the coal mines, and yet those who are offering their proposals will have no power to furnish to the city some particular kind of coal which comes from some particular mine, owned by some one individual, coal which may be the best of all and possibly the only coal just adapted to the needs of the city for some power plant or other public use. If that is excluded, then the city is not permitted to avail itself of the best which can be had in the market. As has been said in the Yaryan case by my associate, the competition, under our law, is three-fold: It involves the price, the responsibility of the bidder, and the quality of the thing offered. And if you exclude from consideration any one of these things, you will, as it seems to me, violate the spirit and purpose of the law.

In the old section, 799 of the Revised Statutes, we had a provision that where a contract was let as an entirety by a municipality it must be let to the lowest bidder. When it was let in separate parts, having regard to the different trades which might enter into it, it was provided that it should be let to the lowest responsible bidder, and while Judge Doyle was on the Supreme bench he considered this Section 799 in one of the cases, not now before me and to which it is perhaps not worth while to make a special citation—it is enough to say that under the Municipal Code adopted in 1902, in this Vol. 96 O. L., we have a repeal of all prior enactments inconsistent with this new Municipal Code. Among those enactments, in my judgment, is this Section 799 which is, in spirit, repealed by Section 143 of the Municipal Code. Now the statute provides, not only that the board of public service must accept the lowest *and best* bid, but it may reject "any or all bids." It may reject any one or any thirteen, and leave the fourteenth, if in its judgment that is the lowest and the best. Taking the two provisions together the court is not inclined to adopt the view of counsel for the plaintiff, that in the provision that the contract must be let to the lowest and best bidder, reference is had only to the responsibility of the bidder and not as well to the quality of the thing proffered.

It has been very earnestly urged, and perhaps the argument is made upon the claimed implication in the case in 42 O. S. to which I have referred, that the difficulties in the way of permitting a competitive bidding, including those with reference to a patented article, may be obviated by the city's first procuring the right from the owner of a patent and then submitting to all bidders by advertising, the right to compete as to that use which the city itself has acquired. But, in our judgment, that would ordinarily be impracticable, for reasons which have suggested themselves to us even before we found the matter somewhat discussed in one or two cases cited, incidentally perhaps, but still discussed. An owner of a patent is ordinarily, as common experience and observation teaches us, the one best qualified, by reason of familiarity with the construction, the exclusive control of a plant for its production, the acquired

skill for the manufacture and furnishing of the improvement, to give it to the city or other buyer upon the best terms and to carry out his proposal with the greatest efficiency, to the most complete satisfaction of the buyer. In other words, in the great majority of cases, and perhaps almost universally, the person who can make the *best bid* for a patented article is the owner or controller of the patent. But waiving this argument, it may fairly be urged that if the city could buy the right to make use of the patented article, presumably bidders could do the same; and, as suggested in some of these cases from other states, all that the bidder has to do to make his contract binding upon him is to agree with the city that he will furnish the article. Although patented and controlled by some other person or corporation, the city may hold him to it. There is no immorality in that; there is nothing contrary to law in it, if he has contracted with the city that he will procure the right and that he will then construct the patented pavement according to the terms of his contract.

In the absence of any provision in the Ohio statutes that a city may not let just such a contract as has been let here, in the absence of any provision in this statute, such as we find in the statute with reference to the city of Cincinnati, which was cited to us, containing the express terms upon which a patented improvement may be used, we are of one mind that we ought not to read into this law the restrictions and qualifications for which counsel for plaintiff contend. Wherever the exclusive right to a thing is owned or controlled, it has seemed to us that the people of a city ought not to be deprived of an opportunity to avail themselves of a useful and valuable thing simply because it is so controlled. This kind of monopoly which we guard by the issuing of letters patent is a monopoly which has been encouraged, because it stimulates inventive genius and in the end results in great good to humanity. Not much encouragement would be given to the inventor of a patented pavement if his market were restricted to individuals, if municipalities were shut out of the number of the purchasers of that which he has invented. Individuals do not ordinarily buy pavements. And the question then comes, whether it is public policy to dis-

courage invention along this line which in the end may inure to the highest benefit of the cities. We have passed through very many stages of bad roads: from the old clay roads, the corduroy and the plank roads, through the divers forms of pavement. Now we have the bitulithic pavement, which has been selected by this board of public service, and it has seemed to this court and to each member of it, that it is wise that the people who have organized themselves into municipalities should be free to avail themselves of every beneficent invention keeping pace with the world's progress.

Under all the circumstances which have been disclosed to us and so ably presented in the arguments on behalf of the plaintiff and defendants, we have no misgivings in holding that the petition herein fails to state a cause of action, and accordingly the demurrer will be sustained.

*Doyle, Lewis & Schaufelberger,* for the plaintiff.
*U. G. Denman,* for the city of Toledo.
*Kinney & Newton,* for H. P. Streicher.

---

## DAMAGES ON ACCOUNT OF A STREET IMPROVEMENT.

[Circuit Court of Hamilton County.]

ROBERT CARLISLE ET AL V. THE CITY OF CINCINNATI.

Decided, March 10, 1906.

*Street—Assessment for Improvement of—Damages to Property Owners Included—Cost of Grading and Lowering Street—Assessment for Surface Improvement—Effect of Signing Petition for Improvement at a Different Grade.*

1. An assessment for a street improvement may be enjoined in so far as it includes damages awarded to the property owners, or the costs of the suit to assess compensation therefor, or the cost of grading or lowering the street to the new grade.
2. In an action to assess damages on account of a proposed street improvement, it is competent for the jury, while disregarding the general benefits which may result to the property, to consider an