## MONAGHAN v. CITY OF INDIANAPOLIS ET AL.

[No. 5,761. Filed December 8, 1905. Dissenting opinion January
5, 1906. Transfer denied February 2, 1906.]

1. PATENTS.—*Right to Make, Sell and Use.—Presumption.*—The
presumption, in the absence of a showing to the contrary, is,
that the patentee has the exclusive right to make, sell and use
the patented article during the term of the patent.   p. 284.

2. MUNICIPAL CORPORATIONS.—*Pavements.—Patents.—Competitive Bidding.*—Where one person has the exclusive right to
make, sell and use a patented pavement, there can not be "competitive bidding" for a contract to use such patented article.
p. 285.

3. SAME. — *Streets. — Construction.—Statutes.—Mandatory.*—It
has been the settled purpose in this State to let contracts for
the construction of streets to the lowest and best bidder when
the cost thereof was chargeable to the property owners, and
the provisions of the statutes relating thereto are mandatory.
p. 285.

4 SAME. — *Streets.—Construction.—Statutes.—Patents.*—While
it will be presumed that officers will do their duty, still, where
a municipal corporation has not the power to contract for a
patented pavement because competitive bidding can not be had
thereon, such corporation's compliance with all of the other
provisions of the statutes relating thereto does not avail to
make such contract valid.   p. 286.

5. SAME. — *Streets. — Construction. — Statutes. — Provisions.* —
Where a statute giving a municipal corporation the power to
construct streets at the expense of the frontagers provides for
competitive bidding, it impliedly excludes the use of a patented
pavement on which there can be no competitive bidding.   p. 286.

6. SAME.—*Streets.—Construction.—Competition.*—A municipal
corporation has no power to contract for the use of a pavement, the materials of which are under the control of one
person, whether such materials be patented or not, where the
law requires competitive bidding.   p. 287.

7. SAME. — *Streets. — Construction. — Right of Frontagers to
Select Kind.*—Where a statute gives frontagers the right to
select "of the accepted kinds of modern city improvement" the
kind of pavement they desire they can not select a patented
pavement on which there can be no competitive bidding, the
statute requiring competitive bidding.   p. 288.

Monaghan *v.* City of Indianapolis—37 Ind. App. 280.

8. MUNICIPAL CORPORATIONS.—*Streets.—Construction.—Competitive Bidding.—Waiver.—*Where a statute requires competitive bidding in the construction of streets, a municipal corporation can not waive such provision, nor can a majority of the frontagers, although such statute gives such majority the right to make their selection of the kind of pavement from "the accepted kinds of modern city improvement." p. 288.

9. SAME.—*Streets.—Construction.—Frontagers' Expense.—*In deciding that a municipal corporation can not let a contract, at the frontagers' expense, for the construction of a street made by the use of a patented pavement, on which there can be no competitive bidding, the statute requiring such bidding, the court does not hold that such municipal corporation can not, acting for itself, use patented articles for municipal purposes. p. 290.

10. SAME.—*Streets.—Construction.—Statutes.—Right to Bid.—*Where a statute requires competitive bidding for the construction of streets, outsiders have no "right" to bid, within the meaning of such statute, where such streets are to be made from patented material and one person owns the exclusive right to make and use same. p. 291.

11. PATENTS.—*Right to Sell.—Terms.—Presumption.—*It will not be presumed that a patentee will sell the right to use the patented article to all people on equal terms or on any terms. p. 292.

12. MUNCIPAL CORPORATIONS.—*Streets.—Construction.—Patents.—Use of.—Restrictions.—Competition.—*Where the patentee of a pavement granted to all the right, at a certain price, to use his pavement, reserving to himself the right to decide whether the user was capable and competent to do the work, there can be no competitive bidding for the construction of a street, such patentee virtually reserving the right to choose the bidder. p. 293.

13. SAME. — *Streets.—Construction.—Patents.—Market Price.—*Where the patentee has established a regular market price for his patented pavement, or he relinquishes his right to use the patent and places bidders on equal terms, municipal corporations can contract for the use of such patented pavement in the construction of its streets. p. 293.

From Superior Court of Marion County (69,271); *James M. Leathers,* Judge.

Suit by John Monaghan against the City of Indianapolis and others. From a decree for defendants, plaintiff appeals. *Reversed.*

*J. E. Bell,* for appellant.

*Henry Warrum, Edward E. Raub, F. Winter* and *Elliott, Elliott & Littleton,* for appellees.

*John R. Wilson* and *William A. Ketcham, amici curiae.*

ROBINSON, J.—Suit by appellant, an abutting property owner, to enjoin the letting of a contract for a street improvement.

The complaint avers that the city's board of public works adopted a resolution for the improvement of the street by paving with brick; that afterward, upon the petition of a majority of the resident freeholders on the street sought to be improved, the resolution, plans and specifications were modified so as to provide Warren's patent bitulithic pavement. The resolution, modification and detailed specifications are set out in the complaint. It is also averred that all the steps preliminary to the letting of the contract have been duly taken; that the board advertised for bids, and threatens to and will, unless enjoined, let the contract and have the work done, to the irreparable injury of appellant. It is further averred that the pavement specified is a patented pavement covered by letters patent of the United States; that there can be no competition in such work, and that an unlawful monopoly is necessarily created by making such improvement with a patented pavement; that there was no necessity for its selection by the board, for the reason that there are many other as good and durable modern first-class accepted pavements not covered by patent, and not controlled by any monopoly; that the cost of the improvement will be greatly increased by the use of such patented pavement, and appellant's property assessed for more than it will be if competition is had.

Appellees answered, alleging that the resolution was modified upon the petition of a majority of the property owners; that the pavement in question is one of the accepted modern city pavements, and has been laid in many cities of this and other states; that its cost is approximately the same

as other bituminous or asphalt pavements, and practically no more; that the specifications call the attention of bidders to the fact that the city engineer will furnish, upon request, to any bidder, a copy of a proposal from the company owning the patent, stating at what price it will furnish the same. A copy of this proposal or agreement is made a part of the answer, and, among other things, provides that the company agrees "to furnish to any contractor to whom a contract is awarded to pave a street or streets in the city of Indianapolis with Warren's bitulithic pavement, during the year 1905, and who shall enter into such contract with such sureties as may be provided by law and by said city, who is equipped or shall equip himself with the necessary appliances purchasable in the open market for preparing and laying such pavement, all the necessary compounds, to prepare and lay such pavement, according to standard specifications for such work, for the sum of ninety cents per square yard for such pavement; said pavement to have a —— inch foundation and a two-inch top, and said compounds to be as follows: [Specifying the different compounds]. In addition to the above we hereby propose and agree to allow the contractor to use our patented processes for laying our pavement, and to furnish an expert who will advise in the laying of the pavement without extra charge." It is further alleged that competition in bidding is thus provided; that appellees are informed and believe and allege that competitive bids will be submitted for the improvement; that they have the right to have the street improved with a patented pavement, even though there could be no competition. A demurrer to this answer was overruled, and, upon appellant's refusal to plead further, judgment was rendered in appellees' favor.

Section ninety-five of the act of March 6, 1905 (Acts 1905, pp. 219, 281, §3519 Burns 1905), provides: "Such board shall * * * let such contract to the lowest and best bidder." Section 107 of said act (Acts 1905, pp. 219,

286, §3531 Burns 1905) provides: "If * * * there shall have been filed * * * a petition * * * in writing, of a majority in number of resident freeholders upon such street * * * sought to be improved, requesting that said street * * * be paved with any certain kind of the accepted kinds of modern city pavement, then the board * * * shall not have the power or authority to pave said street * * * with another kind of material, unless the same is specifically ordered by an ordinance passed by a two-thirds vote of the council of such city. If such original resolution be confirmed or modified, it shall be final and conclusive on all persons, unless, within ten days thereafter, a majority of the resident freeholders upon such street * * * remonstrate against such improvement."

(1) The question presented by the complaint may be briefly stated thus: Does an improvement which is covered by letters patent permit the competition provided for by section ninety-five, *supra?* If this question is answered in the affirmative, it is unnecessary to consider any question raised by the answer, for the reason that if there may be competitive bidding for a pavement covered by letters patent, the complaint is bad.

The complaint alleges that the bitulithic pavement in question is a patented pavement covered by letters patent of the United States. From the nature of letters patent the presumption prevails, until the contrary is shown, that the patentee has the exclusive right to make and use, and sell to others to be used, the thing patented during the term for which the exclusive right is granted. "Letters patent," said the court in *Seymour* v. *Osborne* (1870), 11 Wall. 516, 20 L. Ed. 33, "are not to be regarded as monopolies, created by the executive authority at the expense and to the prejudice of all the community except the persons therein named as patentees, but as public franchises granted to the inventors of new and useful

improvements for the purpose of securing to them, as such inventors, for the limited term therein mentioned, the exclusive right and liberty to make and use and vend to others to be used their own inventions, as tending to promote the progress of science and the useful arts, and as matter of compensation to the inventors for their labor, toil, and expense in making the inventions, and reducing the same to practice for the public benefit, as contemplated by the Constitution and sanctioned by the laws of congress."

If it is proposed to put down a patented pavement, and the patentee has "the exclusive right and liberty to make and use and vend to others to be used" this patented pavement—and under the above definition of a patent this is the case made by the complaint—we fail to see any reasoning upon which to base the statement that there could be competitive bidding as required by the statute. If the patentee controls and retains absolutely the right to use and to sell to others the patented article, so long as he retains this right there could be no competitive bidding for a contract to use the patented article.

In all the legislation in this State since 1852 touching street improvements, provision has always been made for competitive bidding. From 1852 to 1891 the contract was to be let to the "best bidder," and from 1891 to 1905 to "the lowest and best bidder." The one important fact has been kept in view through all this legislation—that competition is safe and is in the interest of the property owner. The legislature has delegated to the municipality, through its board of public works, the power to charge the property of individuads with the expense of the improvement, and it has been held time and again that the steps to be taken in fixing this assessment are mandatory and are to be strictly pursued. The property owner may insist upon the observance of every requirement that will in the least tend to protection. " 'It is, however, the duty of the courts to resolve doubts against the validity

of the exercise of the authority wherever there is any substantial deviation at all, and to sustain proceedings in cases where there is not an exact compliance with the statute only when it clearly and unmistakably appears that no possible injury has resulted to the landowner, or could result to him.'" *Wickwire* v. *City of Elkhart* (1896), 144 Ind. 305. See, also, *City of Bluffton* v. *Miller* (1904), 33 Ind. App. 521, and cases cited.

It is quite true it will be presumed that public officers will do their duty, and let it be presumed that if there is but one bid, and it is exhorbitant or unreasonable, the board will reject it. But it is not a question of good faith or bad faith, or the exercise of a sound discretion, on the part of the municipal officers. It is simply a question of power. What does the statute say they shall do, and have they done it? It is true, as argued, that the statute safeguards the property owners and municipality in various ways;—by stipulating that no contract shall be let which shall be more than ten per cent in excess of the engineer's estimate, nor where the total cost exceeds fifty per cent of the aggregate value of the property as it is assessed for taxation, and the right of the board to reject any and all bids. But are these provisions any more important as safeguards than the provision for competitive bidding? Can any reason be given for ignoring one and observing another? The statute does not expressly exclude patented pavements, but if the use of a patented pavement wholly nullifies the provision for competitive bidding, it is impliedly excluded. If the patented pavement can not be used without disregarding the provision for competitive bidding, its use is as clearly prohibited as it would have been had the statute so stated.

It can not be said that this construction is importing a new term into the statute, that it reads into the statute an additional provision to the effect that a street shall not be improved with a patented pavement. Such a construction does impliedly exclude a patented

article, not because it is a patent, but because of conditions necessarily created and existing under which competitive bidding could not be had. The effect of the construction that should obtain is that these conditions can not be permitted if they result in nullifying a positive statutory provision inserted for the protection and security of the property holder.

It must be admitted that the same reasoning that excludes a patented pavement would exclude a pavement not patented, but which is owned and controlled by a single individual. No logical reason can be given for saying that there could not be competitive bidding for a patented pavement, and that there could be competitive bidding for a pavement not patented, but monopolized by a company or individual. If the owner of the pavement sought to be used has and retains "the exclusive right and liberty to make and use and vend to others to be used" what is desired, what possible difference can it make, so far as it affects the question here considered, whether this exclusive privilege is because of a patent or because of circumstances? And when it is said, as it is in the argument, that the rule deprives municipalities of the use of such patented articles, no difference how beneficial they may be to the public, and that where the best interests of the municipality will be subserved by the use of a patented article the provision for competitive bidding has no application, then it must also be said that this provision has no application if the best interests of the municipality will be served by the use of an article controlled absolutely by a single individual. The result of this reasoning must necessarily be that in any case the provision for competitive bidding may be nullified or ignored if the best interests of the municipality in the particular case will be subserved by so doing.

Much stress is placed, in argument, upon the fact that a majority of the resident property owners petitioned for the

pavement in question under that provision giving them the right to designate a certain kind "of the accepted kinds of modern city improvement." This is a comparatively new provision in street improvement statutes, and gives a right not heretofore generally granted. But we can not conclude that it was the intention of the legislature that competitive bidding would not be required in cases where this right is exercised. The provision for competitive bidding inures to the benefit of all property owners subject to assessment, whether residing upon the street to be improved or not. The persons most interested in the improvement are those who must pay for it. If this petition may nullify the provision for competitive bidding, a substantial right given to a very large majority of property owners subject to assessment may be taken from them by a very small minority. We are not questioning the wisdom or propriety of giving extraordinary power to a majority of those residing on the street. That is a matter exclusively for the legislature. But this power can not be said to be of any more importance than the safeguards provided for the protection of the majority; and, considering the basis upon which rests the doctrine that a municipality may put the cost of a public street improvement upon the owners of abutting property, we can not agree that the legislature intended that this petition should take out of the statute a safeguard which, through all the legislation on the subject, has been provided for the sole benefit of those who must bear the burden of the improvement. This provision can not be waived by the board of public works, nor do we see any reason for saying that a majority in number of resident freeholders upon the street to be improved may waive it. And while the original improvement resolution, providing that the street should be paved with brick, was, upon petition of a majority of the resident property owners, modified so as to provide for Warren's patent bitulithic pavement, the board was still

required by the charter to let the contract for the improvement, if let at all, to the lowest and best bidder. So that the fact that the board adopted the kind of improvement petitioned for by a majority of the resident property owners does not make the case in any respects different from what it would have been had the board in the original improvement resolution specified the bitulithic pavement instead of brick. If a contract is let it must be to the lowest and best bidder, whether the board in the first instance designated the kind of improvement or afterward selected the kind petitioned for by a majority of the resident property owners.

Upon the question above considered, the courts are not agreed. The case of *Hobart* v. *City of Detroit* (1868), 17 Mich. *246, 97 Am. Dec. 185, decides the question in the affirmative, and the case of *Dean* v. *Charlton* (1869), 23 Wis. 590, 99 Am. Dec. 205, decides the same question in the negative. These two cases were the pioneer cases on the subject. Upon the precise question presented by the complaint in the case at bar neither of these cases has been disapproved or modified in the respective jurisdictions in which decided. In a subsequent case (*Kilvington* v. *City of Superior* [1892], 83 Wis. 222, 53 N. W. 487, 18 L. R. A. 45), the Wisconsin court did not disapprove *Dean* v. *Charlton, supra,* but declined "to extend the rule of that case beyond the particular point there decided." The courts in other jurisdictions are not agreed upon the question, but the better reasoning will be found underlying the rule declared by the Wisconsin court.

The doctrine of *Hobart* v. *City of Detroit, supra,* is followed in *Holmes* v. *Common Council* (1899), 120 Mich. 226, 79 N. W. 200, 45 L. R. A. 121, 77 Am. St. 587; *Barber Asphalt Pav. Co.* v. *Hunt* (1889), 100 Mo. 22, 13 S. W. 98, 8 L. R. A. 110, 18 Am. St. 530; *In re Petition of Dugro* (1872), 50 N. Y. 513; *Yarnold* v. *City of Lawrence* (1875), 15 Kan. 126; *Verdin* v. *City of St. Louis*

(1895), 131 Mo. 26, 33 S. W. 480, 36 S. W. 52; *Swift* v. *City of St. Louis* (1904), 180 Mo. 80, 79 S. W. 172. See, also, *Rhodes* v. *Board, etc.* (1897), 10 Colo. App. 99, 49 Pac. 430; *Mayor, etc.,* v. *Raymo* (1888), 68 Md. 579, 13 Atl. 383. If there is no distinction, so far as competitive bidding is concerned, between a monopoly existing by reason of a patent and one existing not by reason of a patent, but by reason of circumstances, and we can see no reason for a distinction, it would seem that the later case of *Smith* v. *Syracuse Improv. Co.* (1900), 161 N. Y. 484, 55 N. E. 1077, is in direct conflict with the earlier decisions in that state. The doctrine of *Dean* v. *Charlton, supra,* is followed in *Nicolson Pav. Co.* v. *Painter* (1868), 35 Cal. 699; *State* v. *City of Elizabeth* (1872), 35 N. J. L. 351; *Burgess* v. *City of Jefferson* (1869), 21 La. Ann. 143; *Fishburn* v. *City of Chicago* (1898), 171 Ill. 338, 49 N. E. 532, 39 L. R. A. 482, 63 Am. St. 236; *Fineran* v. *Central, etc., Pav. Co.* (1903), 116 Ky. 495, 76 S. W. 415. See, also, *Perine, etc., Pav. Co.* v. *Quackenbush* (1894), 104 Cal. 684, 38 Pac. 533. In *Newark* v. *Bonnell* (1894), 57 N. J. L. 424, 31 Atl. 408, 51 Am. St. 609, it is said: "The case of *State* v. *City of Elizabeth* [1872], 35 N. J. L. 351, is not in point, and does not decide the proposition stated in the syllabus." See, also, *Ryan* v. *Patterson* (1901), 66 N. J. L. 533, 49 Atl. 587.

The cases of *Beazley* v. *Kennedy* (1899), (Tenn.), 52 S. W. 791, *Silsby Mfg. Co.* v. *Allentown* (1893), 153 Pa. St. 319, 26 Atl. 646, and *Baird* v. *Mayor, etc.* (1884), 96 N. Y. 567, involved the right of the municipality to purchase patented or monopolized articles for municipal uses.

As the question here presented involves the power of the municipality to charge the property of certain individuals with the cost of a public improvement, it seems

9.    foreign to the question to consider whether the municipality acting for itself may not buy or make use of patented articles for its municipal purposes. A public

street improved at the expense of abutting property owners, and assuming to benefit the abutting property to the extent of the charge imposed upon it, is, to an extent, an improvement for the benefit of the inhabitants of the municipality not different from the public benefit resulting from the purchase of articles for municipal use. The distinction between such contracts is well defined in *Kilvington* v. *City of Superior, supra,* and *Burgess* v. *City of Jefferson, supra.*

In *Hobart* v. *City of Detroit, supra,* a lot owner sued to enjoin the collection of a tax levied to pay the expense of paving the street with the Nicolson pavement—patented—alleging that the contract for the pavement was illegal. The city charter provided that no such contract should be let "except to and with the lowest responsible bidder." The right to lay the pavement was owned exclusively by Smith, Cook & Co., the contractors, who alone, therefore, it is claimed, could and did bid for the contract, and, there being no possibility of a competitor, the contract was awarded to them on their own terms; and this exclusive right precluded the application of this charter provision. Upon the question of whether there should be competitive bidding in such a case the court said: "But it is not, I apprehend, strictly correct to say that because the patented invention which must be made use of is owned by one person exclusively, therefore, no one else can be a bidder. Every one has a right to bid, and to take upon himself the risk of being able to procure the right to make use of the invention."

But if the patentee holds the exclusive right to use and to sell the article, and from the nature of a patent he holds that right, does not a choice of the patented improvement amount practically to a choice of the contractor? Of what consequence is a right to bid when there is no chance for competition? The patentee may sell or may refuse to sell to anyone the right to use the article, and we fail to see how there could be any competition in

the use of a needed article between two persons, one of whom neither owns nor is able to procure the thing needed, and the other of whom absolutely owns and controls the use and sale of the thing needed. Moreover, the statute (Acts 1905, pp. 219, 281, §95, §3519 Burns 1905) provides: "The board may by order impose further conditions upon bidders with regard to bond and surety, guaranteeing the good faith and responsibility of such bidders." It does not appear in this case whether the board imposed this condition upon bidders, but it is not material, in construing the act, whether it did or did not, as the section must be construed as a whole. If it be conceded that the fact that every one has a right to bid and take upon himself the risk of procuring the right to use the article satisfies the requirements of the statute as to competitive bidding, then it must be conceded that this right to bid, in a case where the board has exacted of each bidder a bond guaranteeing his good faith, also satisfies the requirements of the statute.

In *Hobart v. City of Detroit, supra,* it is further said: "If that firm held the privilege of putting down the pavement for sale at a regular price per square foot or yard, the opportunity to bid for a public contract would be as much open to public competition as for any other work requiring skilled labor. For aught we know, this was the case; and we may well take notice of the fact that it is frequently by thus selling the 'royalty' that the owners of new inventions expect to obtain their reward."

If in that case the firm did in fact hold the right to put down the pavement for sale at a regular price, then the question there presented is not the same we are now considering. That opinion does not say that it would be presumed that the firm held the right for sale at a regular price. Nor will such a presumption be indulged. The patent laws may contemplate that the patented article will be offered to the public on equal terms, but the patentee is not required to do so, nor is he required

to offer the article to the public on any terms. So long as he retains the exclusive right to use and sell the article, he has a rigid monopoly, and bidding under such a condition would be no more than a mere form.

(2) It remains to consider the effect of the proposal pleaded in the answer. Does the proposition made by the patentee, relative to the use of the patented article, place all bidders on equal terms and remove the objection to its use? We think not. Without this proposition, we have already concluded that the patentee could absolutely control the bidding, and with such control there could be no competitive bidding except in name. In the proposition made, aside from its sufficiency or insufficiency in any other respect, the patentee has the power to determine indirectly, but effectively, to whom the contract shall be awarded, by reserving to himself the right to determine arbitrarily who is equipped with the necessary appliances for laying the pavement. The statutory safeguard for full and free competition, or the possibility for such, is not preserved with this reservation in the grantee. When the patentee, although granting the right to use the patent, reserves a right by which he may determine arbitrarily who shall have the contract, he has not, so far as competition among bidders is concerned, conceded anything.

We quite agree with counsel that municipalities should not be deprived of the right to use improved methods in street paving because the process or material is patented or is in control of a single individual. And they need not be deprived of this power. The patentee may relinquish his right to use the patented article and place bidders upon even terms by giving them an opportunity to purchase the article or process at its value. It is for the patentee to determine whether the right to use the article, or "royalty, shall acquire a sort of market value which becomes well understood and all persons have the

benefit of such market value." *Hobart* v. *City of Detroit,* *supra.* Whether the improvement to be made shall be expensive or inexpensive must be determined by the municipal officers under the limitations prescribed in the charter. The specifications filed with the pleadings show that the patent here in question applies to a part of the improvement. The specifications provide that a subgrade shall be prepared, and upon this shall be placed a concrete foundation made in accordance with general specifications for concrete. Upon this concrete foundation is to be placed the pavement in question. Suppose a part or all of the ingredients, none of which are patented, entering into this concrete foundation are in the control of a single individual, but have a fixed price, or market value, at which they must be purchased, if purchased and used at all, and that the city's board of works knows that fact, but that such ingredients could be purchased by any one desiring to purchase them, could it be said that the board could not let the contract because there could be no competitive bidding? We think not.

In *Hastings* v. *Columbus* (1885), 42 Ohio St. 585, suit was brought against the city and certain lot owners seeking to charge the lot owners with the cost of a patented pavement. The court said: "Objection is made that each of these improvements required a species of pavement which was patented; that the contractors, in each case, owned the patent; and hence that there was no competition, and defendants can not be assessed. But in each case, before there was any letting, the city had acquired the right to secure, at a reasonable cost, the right of such patent, with respect to this improvement, for any successful bidder for the work, and the bidders were placed by the city, in this respect, substantially on equal terms. We think the objection untenable." The character of the agreement with the city referred to in this case does not appear, but it would not be material whether the city purchased the right to use

the patent or the patentee relinquished the right, provided all bidders were placed upon equal terms and given opportunity to purchase the article at its value.

The question decided in *Kilvington* v. *City of Superior* (1892), 83 Wis. 222, 53 N. W. 487, 18 L. R. A. 45, is unlike the question presented by the answer in the case at bar in two respects: (a) The improvement was made at the expense of the municipality; and (b) the patentee, without any reservation, relinquished to any contractor who took the contract the right to use the patent at a fixed sum.

We think the rule should be that where the patentee retains the exclusive right to use and to sell to be used by others the patented pavement, and he has this right as a patentee, a contract for such pavement to be paid for by abutting property owners cannot be entered into, for the reason that in such case competitive bidding within the plain intent and meaning of the statute cannot be had. But this rule should not and does not exclude the use of a patented pavement. We are not required in this case to indicate the manner in which it may be done, but upon the showing made by the answer, for the reasons given, there could not be the competitive bidding the statute requires. The demurrer to the answer should have been sustained.

Judgment reversed.

Roby, C. J., Myers and Comstock, JJ., concur. Black, P. J., concurs in result. Wiley, J., dissents.

## DISSENTING OPINION.

WILEY, J.—I can not concur in the conclusion announced in the prevailing opinion, nor in the reasoning leading to that conclusion. The rights of the parties must be determined by applying the law to the facts as they are exhibited by the pleadings in this particular case. I am unable to assent to the doctrine that because the process for paving Northwestern avenue, adopted by the board upon the petition of a majority of the property owners, happens

to be a patented process, and that process is owned and controlled by a single firm or corporation, under the facts pleaded there can be no competitive bidding, and hence, for that reason, a valid contract be entered into.

The conclusion reached in the prevailing opinion involves and decides two important propositions: (1) That a patented pavement may be contracted for and used, and abutting property assessed in payment thereof. (2) That where the patentee retains the exclusive right to use and to sell, to be used by others, the patented process, a contract for such pavement, to be paid for by assessments against the abutting property, cannot be entered into, because in such case competitive bidding, within the plain intent and meaning of the statutes governing the city of Indianapolis, can not be had.

The latter proposition is inconsistent with the former, for the reason that the value of a patent is the exclusive right which the patentee or owner possesses to use and control it. If he yields that right the value of his patent is destroyed.

The two propositions are inconsistent for another reason, which is apparent from a statement in the opinion. It is said "that if there may be competitive bidding for a pavement covered by letters patent, the complaint is bad."

The ruling that a patented pavement may be used includes the primary rule which requires competitive bidding, for it is upon that rule that a valid contract may be entered into. If my associates are right, there can be no competitive bidding where the patentee owns and controls the patent, even though he yields to all bidders the right to use it upon equal terms. So the vital question here is: Do the facts pleaded preclude competition in bidding for the proposed improvement? If they do, then the judgment pronounced on appeal is correct. I affirm, however, that this inquiry should be answered in the negative.

Monaghan *v.* City of Indianapolis—37 Ind. App. 280.

There are statutory provisions and facts present in this case that do not appear in any of the decided cases, and, to my mind, they are of controlling importance. This is a pioneer case, so far as I am able to learn, where a majority of the abutting property owners are given, as an absolute statutory right, a voice as to the particular kind of pavement they desire, and where the municipal authority is prohibited from proceeding with the improvement against the expressed wish of such owners.

Upon the former hearing of this case the sufficiency of the complaint was not considered. As it is now ruled by the majority opinion that a patented pavement may be used, the complaint in this case is fatally defective, unless it affirmatively appears from the facts pleaded that there can be no competition in bidding for the work. The holding that a valid contract for the construction of a pavement covered by a patent may be made embraces the concession that competitive bidding may be had. Therefore, under the rule declared, it necessarily, reasonably and logically follows that because a patented pavement is adopted competitive bidding may be had. What is there in the complaint upon which the court can declare as a rule of law that competitive bidding is stifled, and enjoin the board of public works from proceeding to let the contract? It must affirmatively appear from the complaint that there can be no competition, or the complaint is bad. The only averment I can find that pertains to this particular question is the following: "That said bitulithic pavement provided for in said resolution, for which said contract will be let, and with which said improvement will be made, unless an injunction is granted, is a patented pavement covered by letters patent of the United States; that there is no authority for improving streets in said city with a patented pavement, and that there can be no competition in such work, and an unlawful monopoly is necessarily created by making such improvement with a patented pavement."

The complaint is held good upon the presumption "that the patentee has exclusive right to make and use and sell to others to be used the thing patented during the term for which the exclusive right is granted." Presumptions are not indulged in favor of, but rather against, a pleading. The facts stated must make a case in law. The naked averments that the proposed improvement is a patented process, that there can be no competition in such work, and that an unlawful monopoly is created, are mere conclusions of the pleader, and not statements of issuable facts. As the statute provides for competitive bidding, that the contract shall be let to the lowest and best bidder, and that it must be let within certain limits as to cost, the reasonable and legal presumption that necessarily follows would be that the board of public works, in the exercise of its statutory power, will discharge its duties according to law, and will not let the contract, unless it shall appear that there is present free and open competition, and the right to use the patented process is open to all bidders alike.

It is conceded that there must be competition, and it is also conceded that a valid contract for improving a street with a patented pavement may be made. This being true, I am unable to see how my associates arrived at the conclusion that from the facts stated in the complaint there could be no competition, and hence the complaint held good.

With the concession that the mere fact that the proposed improvement was covered by a patent does not prevent competition, and indulging the presumption that the board of public works would discharge its duty according to law, there can be no presumption that a contract would have been let without competition. Under the reasoning in the case of *Hobart* v. *City of Detroit* (1868), 17 Mich. *246, 97 Am. Dec. 185, and all the cases following the rule there declared (I will advert to them later), it should be presumed that the patented pavement can be procured in the open market, or that the patentee will grant to any suc-

cessful bidder the right to use the patented process. In such cases all bidders would be upon an equality, and this of itself would produce and encourage competition. This being true, the conclusion necessarily follows that, there being no facts pleaded from which it can be deduced as a matter of law that competition is stifled, the complaint fails to state facts entitling appellant to equitable relief.

In legal effect, as touching the question of competition, there can be no difference between a patent and a natural monopoly. Neither of them is illegal, as I will attempt to show later in this opinion. If the presumption is that a patented article or a natural monopoly may be obtained from the owner so there may be competition in bidding, and I think this is a reasonable presumption, then the complaint is bad, because there are no affirmative allegations showing that there can be no competition. A single illustration will demonstrate the force of the proposition.

Suppose a gravel road is to be constructed. There is but one gravel bed within reasonable contiguity to the road, and such gravel bed is owned and controlled by one man. There is a fixed and known price at which the gravel may be purchased, and without it can be procured the improvement can not be made. Suppose the petition for the improvement has been granted, the specifications have been adopted, and advertisement made for bids. A property owner whose land is liable to assessment brings a suit to enjoin the letting of a contract, and bases his right for equitable relief upon the fact that the gravel is owned by one man; that it can only be procured from him; that it is a natural monopoly; and avers that "there can be no competition for such work." Under such facts would any court hold his complaint good, and grant him the relief asked? I think not, and yet the illustration presents the same case in principle as the complaint at bar.

Here it is sought to enjoin the use of a patented process because there can be no competition, while in the illustra-

tion relief is sought because of a natural monopoly which excludes the principle of competition as effectually as a patent. If the presumption prevails that the patented article or the natural monopolized article can not be obtained upon equal terms by all bidders, I can not see how "any certain kind of the accepted kinds of modern city pavement" can be utilized, for they are all covered by patents or controlled by monopolies.

In view of the fact that the legislature has conferred upon property owners the right to designate, by petition, the kind of pavement they desire, provided it is of the modern, accepted kind, and in view of the fact that the board of public works is prohibited from proceeding with the improvement by the construction of any other kind of a pavement, it occurs to me that the prevailing opinion establishes a precedent, by which all street improvements could be blocked.

The statute declares that the contract for the improvement must be let to the lowest and best bidder. As to who is the lowest and best bidder is a question for the board of public works, and not a question for the courts. Its determination of that question, in the absence of fraud, is final, and such letting presupposes that there will be competitive bidding.

For the reasons stated, I think the complaint is bad. This being true, if the answer is bad, as declared in the majority opinion, it is good enough for a bad complaint, and the demurrer to it should have been carried back and sustained to the complaint. In my judgment the facts pleaded in the answer constitute a complete defense in bar to the complaint, and my associates have not correctly construed all of the terms and conditions of the agreement of the owners of the patented process, filed with the board, and upon which the answer is partly based. The facts pleaded, both in the complaint and answer, are so fully stated in the majority opinion that it is unnecessary for me to restate them here.

Monaghan *v.* City of Indianapolis—37 Ind. App. 280.

The board of public works is clothed with legislative authority to improve and pave streets, and it derives all of its power from that source. Beyond that authority it can not lawfully go. Within that authority it is the sole arbiter. It is required to conform to the mode prescribed by statute conferring such power. This serves only as a limitation upon the exercise of the power. When the board of public works, which is the authorized agent of the city, proceeds in the way prescribed by statute, it may lawfully use the whole power conferred upon it. The limitation is not upon the power but upon the exercise of it. So far as I know, the universal rule for the improvement of streets is to provide for paying the cost thereof by assessments on the abutting lots. Without at this time quoting the statute in detail, it is made imperative that proposals for bids upon adopted specifications must be advertised for, and that the contract for the improvement shall be let to the lowest and best bidder. There is no mandatory provision of the statute which requires the board to let the contract to the lowest and best bidder. The board is to be the sole judge as to whether any bid or bids is or are reasonable, and if in its judgment the bids are unreasonable all of them may be rejected, and it can not be required to enter into a contract.

In the improvement of a public street there are elements of labor, skill, etc., which enter into it, other than the material with which it is finished and surfaced. It is conceded in this case that any bidder who may procure the contract for the improvement of the street in question can obtain from the patentee the right to use the patented process, at a fixed price per square yard. This opens the door to all bidders, and they stand upon an equality in that regard, The work of grading the street and preparing it for the patented process, as well as all incidental work, is open to all bidders. The work, labor and skill required to place the patented process upon the prepared grade is also open to competition. Every step in the progress of the work,

from its inception to its finish, is open to competitive bidders, except the patented process, controlled by the Warren Brothers' Company, and the right to use that process, and the material of which it is composed, is also open alike to all. No presumption can be indulged because the board of public works decided, upon petition of a majority in number of the abutting property owners, to improve the street with "Warren's patent bitulithic pavement," and that that particular patent is owned and controlled by the Warren Brothers' Company, and which said company agreed to furnish to any and all bidders "the necessary compounds to prepare and lay such pavement" for ninety cents per square yard, that there can be no competitive bidding for such work. The right to use "the necessary compounds to prepare and lay such pavement," at a fixed price, is not prohibitive of competitive bidding, except as to the cost of the "compounds." One bidder, being better equipped to lay the pavement than another, might well be able to perform the work cheaper than another competitor; or one bidder who was no better equipped than another might be willing to do the work cheaper, and still do it at a profit. The mere cost of the material can not be the criterion by which to determine the question of competition.

The standard cements used in the construction of sidewalks, asphalt pavements, etc., have a fixed commercial value that can be procured alike by all purchasers. Yet, because of such fact, competition is not destroyed, where such products are used in public works and enterprises. The elements of labor, conditions, facilities, etc., must all be considered, for they all enter into the question under consideration.

I am firmly convinced that where a street is to be improved, and the proper authority, as in this case, decides, upon the petition of the majority in number of the abutting property owners, the kind of improvement to be made, and though the improvement provides for a pavement which

can only be constructed under a patented process, and the purchase of "the necessary compounds to prepare and lay such pavement" is open alike to any and all bidders, as here, that a valid contract may be entered into for the construction of such pavement, and that the essential element of competitive bidding is not destroyed under the facts disclosed by the record. With these observations I will proceed to a brief review of the statute and authorities. A part of §107 of the act approved March 6, 1905 (Acts 1905, pp. 219, 286, §3531 Burns 1905), reads as follows: "Provided, however, that if at any time between the date of the adoption of the resolution and the day appointed for modifying, confirming or rescinding said resolution, there shall have been filed in the office of the said board of public works a petition or petitions in writing, of a majority in number of resident freeholders upon such street or alley sought to be improved, requesting that said street or alley be paved with any certain kind of the accepted kinds of modern city pavement, then the board of public works shall not have the power or authority to pave said street or alley, or any part thereof, with another kind of material, unless the same is specifically ordered by an ordinance passed by a two-thirds vote of the council of said city. If such original resolution be confirmed or modified, it shall be final and conclusive on all persons, unless, within ten days thereafter, a majority of the resident freeholders upon such street or alley, or proposed improvement, remonstrate against such improvement." The expression "with any certain kind of the accepted kinds of modern city pavement," as it appears in the statute, does not in terms or by implication exclude patented pavements. We must presume that the legislature used the expression advisedly, and if it had been intended to exclude the use of a patented pavement it would so have expressed such intention.

It is averred in the answer that the pavement ordered by the modification of the original resolution is an accepted

kind of modern city pavement. This tenders an issuable fact, and the truth of that fact is admitted by the demurrer. The statute just quoted injects into this case an important element that is not found in any of the decided cases where the point in issue has been involved. Where a majority of the resident freeholders on the street file a petition asking that the improvement be made by putting down a specified particular kind of "modern city pavement," the board is deprived of all power or authority to make the improvement with any other kind of pavement, except it is ordered to do so by an ordinance passed by a two-thirds vote of the city council. The council can override and strike down the will of the property owners, but the board is powerless to do so.

Another element brought into this case by the statute, which was not present in any of the decided cases, is that when the original resolution shall have been confirmed or modified, "it shall be final and conclusive on all persons, unless, within ten days thereafter, a majority of the resident freeholders on such street * * * remonstrate against such improvement." The statute confers upon the majority of the resident lot owners the right to select the kind of a pavement to be used, and for which their property is to be assessed for payment. When they have exercised that right, as provided by statute, the board of public works is shorn of its power to order any other kind of an improvement. The legislature certainly had the right to let the resident freeholders have a patented pavement, if they wanted it, if they should bring themselves within the provisions of the statute. Certain it is that there is nothing in the statute which even remotely or impliedly excludes such pavement.

All that is required by the statute is that after the resident freeholders have made their selection, the board must, upon proper notice, invite bids. If there is more than one bidder, then there is competition, except in the case of fraud

or collusion, and the statute provides against that. If there is but one bidder, it may be presumed that he has been induced to bid with the fact in view that if his bid is exhorbitant or unreasonable the board will reject it.

The statute safeguards the property owners and municipality in various ways. Thus it is provided that no contract shall be let which shall be more than ten per cent in excess of the estimate of the engineer, nor where the total cost of the improvement shall exceed fifty per cent of the aggregate value of the property to be assessed. Also that the board may, and in this case does, reserve the right to reject any and all bids. The statute also provides that each bidder shall file with his bid an affidavit of noncollusion.

Again, it is provided that "such board shall, if a satisfactory bid be received, let such contract to the lowest and best bidder." §3519 Burns 1905. See §§95, 107, Acts 1905, *supra*.

It will be presumed that public officers will do their duty, and in a case of this character it will be presumed that the board would not let the contract except to the lowest and best bidder, and in the event the bid was satisfactory.

The statute (§107, *supra*) further provides that upon confirmation of the resolution, or upon its modification, "it shall be final and conclusive upon all persons, unless within ten days thereafter, a majority of the resident freeholders * * * remonstrate against such improvement." In this case there was no remonstrance. The action of the board being final, the query suggests itself: Has not appellant slept on his rights, there being no fraud or collusion charged? I shall not pause to discuss this feature of the case, but merely say that it appeals to me with some force.

As above stated, the authorities upon the question for decision are not in accord.

Of the cases supportive of appellees' contention, the best-considered and reasoned one, in my judgment, is that of *Hobart* v. *City of Detroit* (1868), 17 Mich. *246, 97 Am. Dec. 185. That case, like this, was a street-paving case, and involved the right of the city to cause to be constructed a patented block pavement. Chief Justice Cooley wrote the opinion, and his reasoning is so clear and his statements so forceful that I desire to refer to it fully, and quote largely from it. The charter of the city of Detroit prohibited the council from entering into any contract for any public work, except to and with the lowest responsible bidder, and only after "advertised proposals and specifications therefor." A certain firm owned the patent and exclusive right to lay the Nicolson pavement. Such firm alone bid for the contract, and the contract was awarded to it. Appellant sued to enjoin the collection of the assessment against his property. In the opinion Cooley, C. J., said: "The doctrine of the complainant leads to this conclusion: That wherever, from the nature of the case, there can be no competition, the city can make no contract, however important or necessary for the interest of the city; since contracts, except by public letting, are forbidden by the express terms of the statute, and those by public letting are forbidden by an implication which is equally imperative. And if applied to this case, however much this mode of paving may exceed all others in utility, it can not be adopted in the city of Detroit, or in any other city with the like provision in its charter, even although the proprietors of the patent might be willing to lay it on terms more advantageous to the city than those on which pavements of less value could be procured. To support this conclusion, we must import into the statute a condition which we must suppose to pervade its spirit, but which is not expressed by its words. The power which the charter gives to the common council to cause the streets to be paved is conferred by another section in very ample terms—the sole condition

Monaghan *v.* City of Indianapolis—37 Ind. App. 280.

imposed upon it being the public letting of the contract to the lowest bidder. The courts, I think, should be very cautious about importing new terms into a. statute in order to make it express a·meaning which its words do not convey, and they ought, at least, to first make sure that they are not changing the legislative .intent, and giving the statute an operation that the legislature never designed, and, perhaps, would never have assented to. * * * But it is not, I apprehend, strictly correct to say that because the patented invention which must be made use of is owned by one person exclusively, therefore, no one else can be a bidder. Every one has a right to bid, and to take upon himself the risk of being able to procure the right to make use of the invention. Certainly the showing that Smith, Cook & Company owned the right to put down the Nicolson pavement in the city of Detroit does not go far enough to show that they alone could bid on a contract for that purpose. If that firm held the privilege of putting down the pavement for sale at a regular price per square foot or yard, the opportunity to bid for a public contract would be as much open to public competition as for any other work requiring skilled labor. For ought we know, this was the case; and we may well take notice of the fact that it is frequently by thus selling the 'royalty' that the owners of new inventions expect to obtain their reward. The royalty acquires a sort of market value which becomes well understood; and all persons have the benefit of this market value just as much as they would if the ownership and right to control were of such a character that monopoly would be impossible. True, the owner may at any time withdraw the royalty from sale in order to drive hard bargains; but, if he does, the public still retain a security in the power to refuse to contract with him. The theory of the complaint is that more than one bid in this case was impossible. But suppose, in point of fact, Smith, Cook & Company had not bid at all, but several other persons, having first ascertained

at what price they could obtain the royalty, had entered
into a sharp competition for this contract, would it not
have been demonstrated that not only was more than one
bid possible, but that the very benefits the charter designed
to secure by the public letting had been obtained? And if
this is so, how can it be said that the fact that a monopoly
of the patent exists necessarily defeats all contracts to which
the patent is essential?"

In the more recent case of *Holmes* v. *Common Council*
(1899), 120 Mich. 226, 79 N. W. 200, 45 L. R. A. 121,
77 Am. St. 587, the supreme court of Michigan had before
it the same question in principle. I quote from the opinion
as follows: "Complainants' proposition seems to be that,
under the charter, no paving contract shall be let which
involves the use of any material which, by reason of its
exclusive production, is not subject to competition, or per-
haps, more accurately, complainants' claim is that such
contract can not be made for the use of such material ex-
cept when it had been subjected to a competition with some
other material. This would result in some serious conse-
quences. If such is the rule, the city may be denied the
right to have the pavement that it wants, because some one
is willing to furnish something else, that may be thought
equally good, for a less price. One or two blocks of a street
may be paved with Nelsonville brick, but, when it is desired
to extend the pavement, they can not take bids, and proceed
to pave with the same, if some other brick can be obtained
cheaper. It may be that the cheaper price is made by
interested parties, at a loss, to injure a rival, or for some
other ulterior purpose, or because of insolvency, or it may
be untried brick, or it may happen that the competing brick
is not likely to be thereafter obtainable for repairs. But
this would make no difference; the city must be subjected
to these dangers and inconveniences, because it can obtain
a lower bid: Thus, a pavement would be likely to be of a
variegated pattern. This doctrine, carried out to its logical

consequences, would prevent a city from doing any public work after an intelligent and well-digested plan, and the harmony and beauty of public improvements would be impaired. Whenever any article that should be the subject of a monopoly should be found to enter into a building or other improvement, the contract would be void, and payment could be enjoined by any taxpayer, if complainants' claim rests on solid ground. In this age of improvement and competition, we should not hold that municipalities are denied the most modern methods and improvements, unless it is clear that they have been prohibited. Many valuable innovations involve patents; others are introduced through agencies, as in this case, and they are, therefore, practically controlled by one person or firm. * * * The gist of complainants' claim is that the city can not specify the brick or other material made and controlled by one manufacturer, but must open the proposed improvement to competitors, and submit to the consequences of competition. * * * A more sensible view to take would seem to be that those charged with the making of an improvement should determine definitely what is wanted, and then advertise for bids, and let the contract to the lowest responsible bidder, leaving him to procure the material required as best he may. * * * Counsel seek to draw the line at patented articles; but we see no distinction between brick made by the Nelsónville company under patents, and brick made by the same company, but not under patents. * * * This rule applied to patented articles should extend to any desirable article, although, from the course of business, its manufacturers may have the exclusive sale of it."

In *Swift* v. *City of St. Louis* (1904), 180 Mo. 80, 79 S. W. 172, the right to contract for paving a street with "Warren's Puritan Brand" of cement (being same here involved) was under consideration, and it was held that when at the

time a street was proposed to be paved with bituminous macadam there was only one manufacturer who had succeeded in making a uniform coal-tar cement, which was available and necessary to be used to bind the macadam, an ordinance specifying that the cement to be used should be that made by such manufacturer was not void on the ground that it thereby prevented competition and denied taxpayers the right to have the work done by the lowest bidder, as provided by the city charter. The opinion is well considered, instructive and convincing.

In *Barber Asphalt Pav. Co.* v. *Hunt* (1889), 100 Mo. 22, 13 S. W. 98, 8 L. R. A. 110, 18 Am. St. 530, it was held that the city of St. Louis was not prohibited from letting a contract to pave a street with material covered by letters patent. In that case it was further held that to rule otherwise would be to deprive the city of the right to enjoy the benefits of modern invention.

The same question was again before the court in the case of *Verdin* v. *City of St. Louis* (1895), 131 Mo. 26, 33 S. W. 480, 36 S. W. 52, and the holding in the case of *Barber Asphalt Pav. Co.* v. *Hunt, supra,* was reaffirmed, and the doctrine as to a patented material was even extended to a material whereof the owner had a monopoly by reason of his exclusive ownership of such material.

A case possibly most directly in point is that of *Hastings* v. *Columbus* (1885), 42 Ohio St. 585. There the city let a contract to pave a street with a patented pavement. It was urged that the contractors owned the patent, and for that reason there could be no competition in bidding, and hence no valid assessment could be made against abutting lots. Before the contract was let, however, the city had acquired the right to secure, at a reasonable cost, the right of such patent, with respect to the improvement, for any successful bidder for the work. It was held that under such facts bidders were placed by the city, in this respect,

substantially upon equal terms, and that the objections urged to the contract were not tenable. The only difference between that case and this is that there the city secured the right to all bidders to use the patent at a reasonable cost, while here the patentees enter into an agreement with the city to furnish, at a fixed price, the patented product to any successful bidder who is equipped or may become equipped to use it, and to furnish an expert free of charge to instruct the successful bidder how to use it.

*Field* v. *Barber Asphalt Pav. Co.* (1902), 117 Fed. 925, is in point. There the city of Westport, Missouri, let a contract to pave a street, and the contract called for "Lake Trinidad Asphalt." In the course of the opinion Mr. Justice McPherson said: "There is evidence tending to show that good asphalt, and quite as good as Trinidad, can be obtained from Bermuda, Mexico, and from places in the United States. On such facts it is contended that the city had no right to limit the contract to Trinidad, and that in so doing the commerce clause of the Constitution was violated, and that the federal anti-trust statutes were likewise violated. And this argument is emphasized by complainant's counsel, because, as he contends, the defendant has a monopoly of Trinidad asphalt. The evidence does not show this to be so. But, if it does have the monopoly, I do not believe the point is well taken. Any individual certainly has the right, in the erection of an improvement, to get that which he believes the best, and that which he prefers, regardless of the reason; and he should not defeat a recovery by showing that in fact something else was as good or better, or that the vender had a monopoly. And why should not the same holding be made as to a city? Can it be so that because the city concludes, although wrongly, that Trinidad is the best asphalt, that its contract must be canceled on a showing that the Trinidad is not the best, and that it is the subject of a monopoly? Why limit the evidence to other asphalts? Why not receive

evidence as to brick or other paving? I think this matter was in the province of the city to determine, and that the courts have no right to review it."

In *Newark* v. *Bonnell* (1894), 57 N. J. L. 424, 31 Atl. 408, 51 Am. St. 609, it was held that where the proper municipal board advertises in good faith for proposals for paving streets, and specifies the employment of the material deemed to be for the best interests of the municipality, the city is not debarred by any rule of law from contracting for what it wants, merely because the desired material is the subject of private ownership or the product of exclusive manufacture.

To the same effect is the case of *Ryan* v. *Patterson* (1901), 66 N. J. L. 533, 49 Atl. 587. The pavement there ordered was to be of the standard of Trinidad lake asphalt. The court said: "If it appears that the action of the city authorities was taken in an honest belief that to award the contract as they did was for the best interests of the public, it will not be disturbed, even though the court, on a review of the same facts, may think that another conclusion would have been justified. The law places the obligation upon the municipal authorities, and not upon the court, and where there are facts which show their action to be consistent with an honest judgment the court should not interfere. *Van Reipen* v. *Jersey City* [1895], 58 N. J. L. 262, 268, 33 Atl. 740; *Findley* v. *City of Pittsburg* [1876], 82 Pa. St. 351; *Ferguson* v. *Passaic* [1897], 60 N. J. L. 404, 38 Atl. 676. In *Oakley* v. *Atlantic City* [1899], 63 N. J. L. 127, 44 Atl. 651, Mr. Justice Lippincott stated the rule in this wise: 'In the absence of fraud or palpable abuse of discretion on the part of the municipal authorities in the exercise of the power granted by the legislature, the only question for judicial cognizance is whether there has been any violation of legal principles or neglect of prescribed formalities in entering into the engagement which is the subject of the controversy.'"

Monaghan *v.* City of Indianapolis—37 Ind. App. 280.

The supreme court of Tennessee, in the case of *Beazley v. Kennedy* (1899), (Tenn.), 52 S. W. 791, held that the board of public works and affairs of a municipality, incorporated under the act of 1883, providing that it shall have exclusive control of the fire department and exclusive power to make all expenditures therefor, but that when a contract involves more than $50 it shall be let to the lowest responsible bidder, is the judge of the quality of desired supplies, and hence when a fire hose was needed, such board may in good faith limit the bidding to two designated brands.

The following New York cases, it seems to me, are in substantial harmony with those I have cited: *Baird v. Mayor, etc.* (1884), 96 N. Y. 567, 582, 583; *In re Petition of Dugro* (1872), 50 N. Y. 513; *Harlem Gas Light Co. v. Mayor, etc.* (1865), 33 N. Y. 309; *People, ex rel., v. Van Nort* (1872), 64 Barb. 205; *People, ex rel., v. Flagg* (1858), 17 N. Y. 584.

In *Dolan v. Mayor, etc.* (1868), 4 Abb. Prac. (N. S.) 397, it was held in the special term of the supreme court that a patented pavement could not be used. On appeal to the general term, reported in the New York Daily Transcript of February 8, 1869, the decision of the special term was reversed, the court holding upon the authority of the case of *In re Petition of Dugro, supra,* that a patented pavement could be used. The cause was appealed to the court of appeals, and was affirmed *per curiam,* with an opinion. *Dolan v. Mayor, etc.* (1876), 67 N. Y. 609.

The decision of the general term reversing the decision of the special term has some pertinent observations, which I desire here to quote: "In the former of these cases a resolution and ordinance had been passed to pave Thirty-third street with Nicolson pavement, and an injunction was granted to prevent such pavement. In the second case a similar ordinance had been passed to pave Seventh avenue with Stafford pavement, and an injunction was granted to prevent the same. The injunction on argument before the

special term in the first case was dissolved, and in the second case was continued.    Both cases are brought upon appeal and present the same question for our consideration.    The grounds upon which the injunctions were granted were that these pavements were each patented and could not be the subject of competition among contractors and the corporation could not contract for its use or cause said pavement to be laid without a violation of the city charter, which provided, among other things, that such contract shall be made on bids made on public notice and given to the lowest bidder, and the act of April 17, 1861, directs that all contracts shall be awarded to the lowest bidder.    The right to use these pavements being secured by patent, the Nicolson pavement to a company in the one case, and to individuals in the other case, it is contended that no competition can take place in regard to doing this work, and that there can be no offer for bids that can be of any avail; therefore, that by this provision of the charter the corporation can not contract for these pavements and that the patentees are virtually prohibited from using the same.    The real question, therefore, is whether, when a municipal corporation is required by its charter to accept bids for work or materials required for the use of the corporation, patented articles or modes of doing work are prohibited by that provision because such articles or mode of work can not be the subject of competition ?    There can be but little difficulty in adopting the conclusion that no such proposition was before the legislature when they passed the statute. * * * If they had intended to prohibit the use of a patented article or work for this reason, they would have used language applicable to such purpose by express prohibition. * * * This narrows the inquiry down to the question of whether a statute requiring work to be done and materials to be furnished by contract for a municipal corporation prohibits the use of everything which is patented, or belongs exclusively to one or more individuals.

Monaghan v. City of Indianapolis—37 Ind. App. 280.

* * * To say that in such cases the city should not use the patented articles, would be to deprive them of all improvements in matters necessary to the municipal government and leave them to travel in the same paths in which their predecessors trod, without benefit from any new discoveries of science, or any advance in modes of work applicable to public use. The statute in question does not, in my judgment, require any such construction. * * * As it is apparent the law did not in terms prohibit the use of patented articles of work, we are not warranted in the conclusion that any intent existed to deprive the city, in cases where the interest of the city required the use of such articles or work, of using them in the only way in which it could be done. * * * The object of the provision in the charter was not to exclude any article or work from public use. * . * * There is nothing in the law which contains any such prohibition, even if a literal construction of the act should be sufficiently comprehensive to warrant such exclusion. My conclusion is that this injunction can not be sustained."

The question of the right of a city to improve its streets with a patented pavement is reviewed by an able author (Mr. A. R. Watson), in 20 Am. and Eng. Ency. Law (2d ed.), 1166. I quote as follows therefrom: "Two views have been taken of the effect of a provision requiring advertisements and bids for patented articles or articles or materials controlled by a monopoly. One is that municipal corporations are thereby precluded from requiring articles or materials with reference to which there can not be free competition in the bidding: The other and far more preferable view is that where the best interests of the city will be subserved by the use of a patented article or an article controlled by a monopoly, procurable from only one source, the provision in question has no application whatever, the case being without its spirit and intention. Another doctrine seems to require advertisements for bids,

but permits a contract involving the use of a patented or monopolized article if deemed best for the city."

The New York street-improvement case, to which I have referred, directly involving the right to use a patented pavement, is in harmony with the above quotation. Mc-Quillin, Mun. Ordinances, §554.

It is stated that the tendency of the courts favors the adoption of the Michigan rather than the Wisconsin rule. The opinion of Justice Brewer in *Yarnold* v. *City of Lawrence* (1875), 15 Kan. 126, expressly approves the Michigan case (*Hobart* v. *City of Detroit* [1868], 17 Mich. *246, 97 Am. Dec. 185) and disapproves the Wisconsin case. (*Dean* v. *Charlton* [1869], 23 Wis. 590, 99 Am. Dec. 205). I find, therefore, that there are at least eight jurisdictions in which the old Wisconsin rule is disapproved and the Michigan rule is followed, in which jurisdictions it is now settled that a patented pavement may be used, notwithstanding a statutory provision which requires competitive bidding. It will be thus observed that the Michigan rule has been adopted by a larger number of the courts of last resort in the United States than has the Wisconsin rule, and the cases which support the Michigan rule are far more numerous than the other. The supreme court of Michigan still follows the case of *Hobart* v. *City of Detroit, supra.* See *Attorney-General* v. *Detroit* (1872), 26 Mich. 263; *Holmes* v. *Common Council* (1899), 120 Mich. 226, 79 N. W. 200, 45 L. R. A. 121, 77 Am. St. 587.

The latter case is a well-reasoned one, and is on all fours with the case in hand. The opinion in that case closes with the following: "We think the law is complied with, in the absence of actual fraud or corruption, when specifications are submitted to competitive bidding, although some article is specified which, by reason of a patent or circumstances, is in the hands or under the control of a single dealer." It will be observed by a reference to the statute that it does not require competitive bidding at all as to

the material to be used in the improvement of the street, for it simply refers to works and not to supplies or material.

The improvement of a street must be considered as a whole, for it embraces everything that is necessary to complete the work. In competitive bidding, therefore, for such work it is not necessary for the bidder to submit his bid in piecemeal, to wit: so much for grading, so much for excavations, so much for drainage, if drainage is required, so much for materials, whether such materials be covered by patent or not, and so much for work and labor, but his bid may be submitted as a whole for the completed job.

The case of *Dean* v. *Charlton* (1869), 23 Wis. 590, 99 Am. Dec. 205, so strongly relied upon by appellant, is shorn of much of its force by the later decision of that court in the case of *Kilvington* v. *City of Superior* (1892), 83 Wis. 222, 53 N. W. 487, 18 L. R. A. 45.

There the city of Superior contracted for the erection of a crematory to consume garbage, etc., and it was held that the fact that the mode of building the crematory was patented would not make the contract for its construction void, when the contract for performing the work and furnishing the materials is let to the lowest bidder, with the understanding that the patentee would allow the use of his patent and superintend its construction in consideration of a certain specified sum, to be paid to him by whoever secured the contract. That case is, in principle, exactly like this, and hence supportive of appellees' contention. I quote from the opinion in that case the following: "In view of the legislation which followed *Dean* v. *Charlton* [(1869), 23 Wis. 590, 99 Am. Dec. 205], and the fact that it was decided by a divided court, and the general tenor of subsequent decisions, and the further fact that patented methods and processes now enter so largely into various classes and kinds of public work, we are not disposed to extend the rule of that case beyond the particular point there decided. In *Hobart* v. *City of Detroit* [1868], 17

Mich. *246, 97 Am. Dec. 185, and *Motz* v. *Detroit* [1869], 18 Mich. *495, *515, decided at about the same time, a contrary conclusion was reached; and in *Nicolson Pav. Co.* v. *Painter* [1868], 35 Cal. 699, and *Burgess* v. *City of Jefferson* [1869], 21 La. Ann. 143, the rule of the majority of the court in *Dean* v. *Charleton, supra,* was sustained. Since then, in *In re Petition of Dugro* [1872], 50 N. Y. 513, the question has been decided in conformity with *Hobart* v. *City of Detroit, supra,* and other like cases; and in *Yarnold* v. *City of Lawrence* [1875], 15 Kan. 126, Brewer, J., notices the diversity of judicial opinion on the question, and is inclined to favor the views of the courts of Michigan and New York. *Baird* v. *Mayor, etc.* [1884], 96 N. Y. 567. In the present case there was a definite, well-settled price for the patent and specifications, at which it was held and offered to the city and all contractors, which would limit the recovery of the patentee, so that in fact there was free competition for the work and materials and all else except the patent. The city had the benefit of all the competition of which the nature of the work admitted; and in such cases, where the entire work is done at the general expense of the city, the statute ought not to be so construed as to exclude the city from availing itself of desirable patented works or improvements, as to which there is but one price, and for which there can, in the nature of the case, be no competition, and when, for performing the work and furnishing materials, the advantage of competition is secured."

The California, Louisiana and early Wisconsin cases, as they appear to me, are based upon a consideration or ground that does not exist here. And further than this, the supreme court of California has, it seems to me, receded from its earlier holding in the more recent case of *Perine, etc., Pav. Co.* v. *Quackenbush* (1894), 104 Cal. 684, 38 Pac. 533. I make the following quotation from that case, to show the force of the opinion, to the end that it may be

apparent that the judicial tribunal of last resort of California is now in harmony with the views herein expressed: "Appellant relies upon *Nicolson Pav. Co.* v. *Painter* [1868], 35 Cal. 699. That case does not sustain appellant, though some expressions used in the opinion give color to his claim. By an act approved April 22, 1866 (St. 1865-66, p. 720), it was provided that whenever a majority of the owners in frontage should petition the board of supervisors of the city and county of San Francisco for the construction of the Nicolson pavement, they should order it to be done. In that case the owners did not so petition, but nevertheless the board ordered the Nicolson pavement to be used, and it was held that their proceedings were void. Sanderson, J., said, in the course of the opinion, in substance, that where there can be but one bidder, and where the owners are prohibited by heavy penalties from doing the work, to advertise for sealed proposals, and open, examine, and declare them, 'would be to play as broad a farce as was ever enacted behind the footlights.' But elsewhere in the same opinion the same learned justice said: 'It is true that the third section (St. 1862, p. 391), which confers the power to pave, does not restrict the board to any kind of pavement, and if the question turned exclusively upon that section, the board would have the power to contract at its election for any kind in use.' As no act, such as the Nicolson pavement act, restricts the powers of the board to order the bituminous rock pavement, we may adopt the language of Sanderson, J., last-above quoted, as applicable to this case, and as correctly declaring the law. Besides, in this case the specifications did not confine bidders to one patented process, nor exclude processes not patented; nor were the owners excluded from using the patented processes, but had the liberty to use them upon payment of a royalty of $1 per ton of the rock treated. Appellant's contention would effectually exclude all methods of paving which were patented, even though such method, because of

its superiority, or even because of its cheapness, would be specially advantageous to the owners of lots liable for the expense of paving, as well as the municipality charged with its maintenance."

The Kentucky case (*Fineran* v. *Central, etc., Pav. Co.* [1903], 116 Ky. 495, 76 S. W. 415), relied upon by appellant, is not of controlling influence, because the facts upon which the decision is based are so vitally different from those at bar. There the ordinance required the council to accept the bid of the lowest and best bidder. Here the board of public works has the right to reject any and all bids. The facts in that case also show that no one but the appellee, who owned and controlled the patent, could obtain the right to lay the pavement, or make a *bona fide* bid for the construction of the street with the material in question, and the council knew such to be the fact.

Here it is admitted that any one who desired to bid for the work under contemplation had a right to secure from the patentee, at a fixed and known price, the necessary materials, etc., with which to construct the pavement.

I do not deem it important to review the other authorities which have been cited. After a careful consideration of the question involved, and the authorities pro and con, I have reached the conclusion that the great weight of authority and the best-considered opinions abundantly support the contention of appellees. A patent right or a commercial product manufactured under a patent right does not constitute an unlawful monopoly. Such right is given by the laws of the United States as reward for inventive genius and for the benefit of the public. Personally, I do not know anything about the merits or demerits of the particular kind of pavement which the board of public works of the city of Indianapolis has ordered constructed in this case, but I do know that the public, as well as the individual, is entitled to the best that can be procured within reasonable restrictions, and should it transpire that this par-

Monaghan *v.* City of Indianapolis—37 Ind. App. 280.

ticular kind of pavement is the best in the market, and that it can be constructed for or within a reasonable range of other modern pavements, then the courts ought not to strain the law to prevent its use, especially when a majority of the resident freeholders have petitioned for it.

The facts pleaded in the answer make a much stronger case in favor of the rule first declared in the case of *Hobart* v. *City of Detroit* (1868), 17 Mich. *246, 97 Am. Dec. 185, than can be found in any of the decided cases. The answer proceeds upon the accepted theory that in the improvement of a street the work must be open to competition. In the agreement filed with the board by the owner of the patented process, with which it is proposed to improve the street, that feature is made prominent, and it is said that "inasmuch as in the construction of such pavement the use of certain compounds are necessary, and in the letting of contracts for all such street improvements competitive bidding is necessary, and for the purpose of permitting such competitive bidding," etc., the patentee agrees that any bidder may have the right to use and purchase the patented processes and compounds upon certain terms.

By the agreement the patentee binds himself to furnish to any bidder to whom the contract may be awarded, "who is equipped or shall equip himself with the necessary appliances purchasable in the open market for preparing and laying such pavement," all the necessary compounds, etc., for the sum of ninety cents per square yard for such pavement. It is further stipulated to allow the contractor to use the patented process and to furnish an expert who will advise in laying the pavement without extra charge. That part of the agreement which appears in quotation above seems to be the stumbling block which my associates have not been able to avoid. Without that clause in the agreement, it is held that the patentee could "absolutely control the bidding and that with such control there could be no competitive bidding except only in name." Referring to

that provision, it is further said that "the patentee has the power to determine indirectly but effectively to whom the contract shall be awarded, by reserving to himself the right to determine arbitrarily who is equipped with the necessary appliances for laying the pavement. * * * When the patentee, although granting the right to use the patent, reserves a right by which he may determine arbitrarily who shall have the contract, he has not, so far as competition among bidders is concerned, conceded anything." Here is where, I think, the prevailing opinion is radically wrong, in that it erroneously construes that particular provision of the contract.

It is not a reasonable construction, nor one in accord with all the other conditions of the contract, to hold that under that particular provision the patentee reserved to himself the arbitrary right to say or determine whether or not the successful bidder "is equipped or shall equip himself with the necessary appliances," etc. The necessary appliances, etc., to which reference is made, are no part of the patent, or covered by a patent, but are purchasable in the "open market" by any one. The patentee has no voice in the matter, unless it might be merely to indicate what tools, appliances, etc., were necessary properly to lay the pavement. Or we might reasonably presume that any one who desired to bid for the work would first acquaint himself with what was necessary successfully to perform his contract.

But as to what are "necessary appliances," etc., for laying the pavement, is not left to the arbitrary determination of the patentee, for the patentee agrees to furnish the compounds, etc., to any contractor to whom the city may let the contract, who has, or who will get, the necessary appliances. These conditions are open to all.

It is for the board of public works to determine, in its contract with the successful bidder, whether he has the necessary appliances with which to do the work. His con-

tract and bond would protect the interests of the city, the property owners and the patentee.

Suppose, under the facts in this case, that the contract had been let, and the contractor was ready to proceed with the work; but the patentee refused to let him have the "necessary compounds" on the ground that he was not equipped with the "necessary appliances" to do the work. But suppose, as a matter of fact, he was so equipped, and could do the work successfully—could it be reasonably contended that the patentee, upon such showing, would arbitrarily be allowed to say that he would not carry out his agreement? I think not. The very purpose of the agreement, specifically declared, was to pave the way to open and free competition, and yet in the very face of this fact it is construed by my associates as stifling competition. Such construction is, in my judgment, not warranted, under the provisions of the agreement.

For these reasons, and upon the authorities I have cited, I am constrained to disagree with my associates. The demurrer to the answer was properly overruled by the trial court, and the judgment should be affirmed.